A96A0285. ALPHARETTA FIRST UNITED METHODIST CHURCH et al. v. STEWART et al.
(472 SE2d 532)

ANDREWS, Judge.

Alpharetta First United Methodist Church ("Church" or "Alpharetta First") and North Georgia Conference of the Methodist Church, Inc. ("Conference"), appeal the trial court's denial of their motion for summary judgment on Pamela and Roger Stewart's claims arising out of a sexual relationship between Pamela Stewart and Michael Boen, a minister at the Church. We conclude the trial court erred in denying the motion and, therefore, reverse.

Ms. Stewart alleges battery, intentional infliction of emotional distress, false imprisonment, assault, and breach of trust against Boen, the Church and the Conference. Roger Stewart brings a claim for loss of consortium against Boen, the Church and the Conference. The complaint also alleges negligent hiring and retention against the

Church and Conference, and professional malpractice against Boen.

The Stewarts contend that, although Ms. Stewart appeared to consent to the sexual contacts with Boen, she was, in reality, the victim of Boen's manipulation of the "transference" phenomenon. Transference is defined as "a process whereby a patient undergoing psychotherapy for a mental or emotional disturbance (particularly a female patient being treated by a male psychotherapist) develops such overwhelming feelings of warmth, trust, and dependency towards the therapist that she is deprived of the will to resist any sexual overtures he might make." *Jacobsen v. Boyle*, 196 Ga. App. 411, 412 (397 SE2d 1) (1990).

The trial court denied the Church's and the Conference's motions for summary judgment,[1] and they now appeal, contending the statute of limitation bars Ms. Stewart's tort claims and the First Amendment protects the Church and Conference from the negligent hiring and retention claims. They also argue the sexual relationship between Stewart and Boen was consensual, and even assuming "transference" did occur and Ms. Stewart was incapable of resisting Boen's sexual advances, the Church and Conference cannot be guilty under the doctrine of respondeat superior for an employee's sexual misconduct.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. [Cit.] A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a [genuine] jury issue on at least one essential element of plaintiff's case. . . . A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case." (Emphasis omitted.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Construing the evidence, as we must, in favor of the Stewarts as non-movants on summary judgment, the record shows that the Stewarts joined the Church in April 1990. At that time, Dr. Nat Long was the pastor, and Boen was associate pastor, having held that position since 1988. Pamela Stewart began counseling sessions with Boen in September 1990. Ms. Stewart stated that the main reason

---

[1] Michael Boen did not file a motion for summary judgment. Accordingly, the claims against him are not at issue in this appeal.

she requested the counseling sessions was because of an incident involving the associate pastor of her former church. She complained to the minister of that church about a "drunken assault" by the associate pastor while on a mission trip. According to Ms. Stewart, the minister did not believe her, told her she was a troublemaker, and requested she leave the church. Ms. Stewart said she was concerned that the ministers at Alpharetta First had been told about this incident and wanted to find out what had been said about her.

In December 1990, Boen told Ms. Stewart that she should discontinue the counseling sessions with him and find another counselor because he was sexually attracted to her. Despite this request from Boen, Ms. Stewart did not discontinue the counseling sessions, and in January 1991, Boen and Ms. Stewart began having "phone sex" conversations. Ms. Stewart stated that Boen initiated the first such conversation but that at times she would call him. Ms. Stewart said that while she led Boen to believe she was participating in the "phone sex," she was, in actuality, only pretending.

The counseling sessions ended in February 1991. According to Ms. Stewart, her first sexual encounter with Boen was in February 1991, while still in counseling. She stated that Boen called her at home and asked her to come to his office so they could have sex. She said she got in her car, drove to his office and had sex with Boen in the office. Ms. Stewart said she did not see Boen anymore for counseling after this incident because, by that time, he had already referred her to another counselor.

Other than "phone sex," Ms. Stewart's next sexual encounter with Boen was in March 1991, when she called him and asked him to give her a ride to a basketball game, and he came back to her house with her.

Although Ms. Stewart states the sex was "forcible" she does not claim Boen physically forced her or that she told him "no" or physically tried to resist him. She explained as follows: "Q. Why do you call it forcible? A. Because I don't believe that I was in an emotional position to resist him, and I don't know why. I haven't gotten to that part of my therapy yet."

In June 1991, Boen left Alpharetta First to become the pastor of a Methodist Church in Carrollton. The relationship continued, however, with Ms. Stewart driving to Boen's house in Carrollton when he would call and ask her.

In 1992, Ms. Stewart said there were several more "phone sex" conversations but no physical encounters. Stewart had another meeting with Boen in October 1993. She called him and then went to his house where they talked and then had sex. Her last sexual encounter with Boen was in November 1993. Again, Stewart stated she went to Boen's house in response to a phone call from him. In December

1993, after learning that Boen was engaged to be married, Stewart did not see or speak to him again.

Ms. Stewart told Reverend Tinsley, the clergyman who took over as associate pastor at Alpharetta First, of her involvement with Boen. However, she refused to come forward with her story, stating she was not ready to tell anyone else. In December 1993, Reverend Tinsley urged her to disclose the relationship with Boen, but Stewart still refused.

In March 1994, Ms. Stewart sent a letter to the Conference, describing her sexual relationship with Boen. The day the Bishop received the letter, he and the district superintendent met with Boen, and Boen submitted his resignation.

Michael Boen testified in his deposition that he was not the one who made the sexual advances in the relationship with Ms. Stewart, but rather, she was the one who made advances to him. Boen testified to one act of oral sex and one act of attempted intercourse with Ms. Stewart. Boen admitted to the "phone sex" conversations but estimated that half of these conversations were initiated by Ms. Stewart.

1. Defendants are correct in their contention that Pamela Stewart's tort claims are barred by the statute of limitation. The applicable statute of limitation on these claims is two years. OCGA § 9-3-33; *Long v. Marino*, 212 Ga. App. 113 (441 SE2d 475) (1994).

The tort claims against the Church are time-barred because Boen left the Church in June 1991, and the Stewarts did not file their complaint until May 17, 1994, almost three years later. With regard to the claims against the Conference, Stewart contends her last sexual encounter with Boen was in November 1993. But, Stewart also testified in her deposition that after January 1992, she had progressed in her therapy to the point where she was able to tell Boen "no" if he approached her about sexual intercourse. Accordingly, any alleged acts of sexual intercourse occurring after January 1992, were, by Ms. Stewart's own admission, consensual. Therefore, Pamela Stewart's tort claims against the Conference are also barred by the statute of limitation.

The Stewarts claim, however, that the statute of limitation was tolled due to Pamela Stewart's incompetency. In support of this contention, they submit the affidavits of Ann McNeer, a clinical psychologist, and Guy Helms, a pastoral counselor. Both McNeer and Helms stated that Stewart suffered from despondency, depression, and a borderline personality disorder. But, this is not evidence of incompetency sufficient to toll the statute of limitation. This Court has held that the test for incompetency sufficient to toll the statute of limitation is "one of capacity — whether the individual, being of unsound mind, *could not* manage the ordinary affairs of her life." (Punctuation

omitted; emphasis in original.) *Branch v. Carr*, 196 Ga. App. 534 (396 SE2d 276) (1990) (quoting *Tri-Cities Hosp. Auth. v. Sheats*, 156 Ga. App. 28, 30 (273 SE2d 903) (1980)). A review of Helms' and McNeer's affidavits shows that neither supports a finding of incompetency as set out in *Sheats*. In addition, there is Pamela Stewart's deposition testimony which affirmatively shows she was capable of managing "the ordinary affairs of life." For instance, from June 1992 to September 1993, Ms. Stewart was very active in the Church and also held the position of Public Service Director at a local radio station. Accordingly, the statute of limitation was not tolled due to any alleged incompetency of Pamela Stewart.

2. The Stewarts' tort claims against the Church and Conference also fail because they cannot show the Church and Conference are liable under the theory of respondeat superior. Even assuming that the relationship between Boen and Ms. Stewart was not consensual, it is well settled under Georgia law that an employer is not responsible for the sexual misconduct of an employee. *B. C. B. Co. v. Troutman*, 200 Ga. App. 671, 672 (409 SE2d 218) (1991); *Favors v. Alco Mfg. Co.*, 186 Ga. App. 480, 482 (367 SE2d 328) (1988); *Big Brother/Big Sister of Metro Atlanta v. Terrell*, 183 Ga. App. 496, 497 (359 SE2d 241) (1987). The basis for these holdings is that these types of torts, being purely personal in nature, are unrelated to the employee's duties and, therefore, are outside the scope of employment because they were not in furtherance of the master's business. *Doe v. Village of St. Joseph*, 202 Ga. App. 614, 616 (415 SE2d 56) (1992); *Cox v. Brazo*, 165 Ga. App. 888, 889 (303 SE2d 71) (1983). This is especially true of the sexual misconduct of a minister. The record shows that such behavior is clearly contrary to the tenets and principles of the Methodist church and is not a part of, or in any way incidental to, a minister's duties and responsibilities.

Therefore, even if her tort claims were not time-barred, Ms. Stewart cannot recover against the Church and Conference under a theory of respondeat superior. Accordingly, although his claim is not barred by the statute of limitation,[2] the Church and Conference also are entitled to summary judgment on Roger Stewart's claim for loss of consortium. See *Henderson v. Hercules, Inc.*, 253 Ga. 685 (324 SE2d 453) (1985) (right to recover on claim for loss of consortium is derivative and stems from spouse's right to recover on his or her cause of action).

3. Next, the Church and Conference argue the Stewarts' claim for negligent hiring and retention must fail because the First Amend-

---

[2] While tort claims under OCGA § 9-3-33 have a two-year statute of limitation, claims for loss of consortium are governed by a four-year statute of limitation.

ment puts this issue beyond the jurisdiction of a civil court. We do not reach the constitutional issue, however, because we find the Stewarts have come forward with no evidence tending to show the Church and Conference knew or should have known that Boen had a propensity for this type of alleged sexual misconduct.

An employer may not be held liable for negligent hiring or retention unless the plaintiff shows the employer knew or should have known of the employee's violent and criminal propensities. *Thurmond v. Richmond County Bd. of Ed.*, 207 Ga. App. 437, 440 (428 SE2d 392) (1993); *Odom v. Hubeny*, 179 Ga. App. 250, 252 (345 SE2d 886) (1986). Specifically, the Stewarts must show that the Church and the Conference knew or should have known of Boen's propensity for sexual misconduct. *Slaton v. B & B Gulf Svc. Center*, 178 Ga. App. 701, 702 (344 SE2d 512) (1986).

(a) *Negligent hiring claim.* There is nothing in the record before us to show the Church or Conference should have been on notice prior to ordaining Boen that he had a propensity for sexual misconduct. Boen had graduated from Columbia Theological Seminary and then worked for two years in a lay position before applying to be ordained. As part of the ordination process, Boen was required to submit letters of recommendation and transcripts and undergo psychological testing and extensive interviews by the ordination committee.

The Stewarts point out that Boen was suspended for a year while at Columbia for cheating on a Hebrew examination and his psychological evaluation indicated certain problems, such as difficulty controlling his impulses, a tendency to use poor judgment, a tendency to disregard the rights of others, and a likelihood to express aggression in a physical manner. This psychological evaluation consisted of the Minnesota Multiphasic Personality Inventory, the Interpersonal Behavior Survey, the Strong-Campbell Interest Inventory, and the Sentence Completion Test. The psychological evaluation also showed several positive characteristics such as: "He is very social and interested in leadership in (sic) service to other people. . . . He shows a pattern of interest moderately like those of successful ministers or social workers." These types of generalized findings, without more, are not sufficient to put the Church and Conference on notice of a propensity for sexual misconduct. See *Mountain v. Southern Bell Tel. &c. Co.*, 205 Ga. App. 119, 121 (421 SE2d 284) (1992) (in claims for negligent retention or hiring, plaintiff must show employer knew of those propensities which caused the alleged injury). Accordingly, we find no evidence in the record from which the Church or Conference could have concluded that Boen had a propensity for the type of sexual misconduct alleged by Ms. Stewart.

(b) *Negligent retention claim.* The record is also devoid of any

probative evidence tending to show the Church or Conference was or should have been on notice of a propensity for sexual misconduct after Boen became a minister at the Church. The Stewarts make numerous allegations as to Boen's conduct with different women but have submitted no admissible evidence in support of this contention. Although there was talk at the Church about Boen's relationship with Beverly Merriam, a church employee, both Merriam and Boen were single at the time and later married each other. Further, Boen denied any sexual relationship with Ms. Merriam when Reverend Long questioned him on the subject. Nevertheless, because of the relationship with Merriam, Reverend Long recommended that Boen be transferred to another church in the spring of 1991. In addition, and most importantly, Boen's personal, consensual relationship with Merriam is totally unrelated to the type of conduct complained of by Ms. Stewart. Id. at 121.

The Stewarts also argue that a letter to Reverend Long from a prospective church member put the Church and Conference on notice of Boen's propensity for sexual misconduct. In the letter, the woman, Ms. Burkette, claimed Boen came to her house, apparently after having been drinking, made inappropriate comments and touched her on the knee. Long immediately called Burkette and met with her to discuss the letter. Long also discussed it with Boen who denied the events in the letter. Long stated that he believed Boen and felt Burkette was not telling the truth. Although Reverend Long testified about the letter from Ms. Burkette, the letter is not in evidence and there is no testimony from Ms. Burkette concerning the incident. The only evidence in the record on this matter is Reverend Long's testimony, and he stated that, after a thorough investigation, he determined the woman was not telling the truth.

Further, as Long testified in his deposition, at no time did any woman come to him and say she was having a sexual relationship with Boen. Long also stated in his affidavit that he was never, at any time, led to believe that Boen was a threat to the women parishioners. Long further stated, "[i]n fact, I believe that Michael Boen possibly had an excellent future in the ministry."

While Ms. Stewart states that she told Reverend Tinsley, the associate minister who succeeded Boen, about the affair with Boen, she also told him she was not ready to come forward and tell anyone else about the relationship. Accordingly, Ms. Stewart cannot now complain of Reverend Tinsley's failure to act when she told him she was not ready to disclose her relationship with Boen. Ms. Stewart's communications to Tinsley were privileged and could not be disclosed without her permission. OCGA § 24-9-22.

A review of the record shows the Stewarts have submitted no affidavit or deposition testimony from any woman, much less any

church member, claiming any misconduct by Boen. If the Stewarts had anyone who could support their allegations as to Boen's misconduct and the fact that the Church and Conference knew or should have known of this misconduct, it was incumbent on them "to have at least obtained an affidavit from such party so stating." *Thurmond v. Richmond County Bd. of Ed.*, supra at 441. The Stewarts did not do so, and therefore, there is no competent evidence in the record to support the Stewarts' claim for negligent retention against the Church and Conference.

4. In light of our holdings above, we need not address the Church's and Conference's remaining enumerations of error as we find they are entitled to summary judgment on all claims.

*Judgment reversed. Pope, P. J., and Smith, J., concur.*

DECIDED JUNE 18, 1996.

*Goodman, McGuffey, Aust & Lindsey, Edward H. Lindsey, Jr., Joseph M. Maguire, Jr., Leslie S. Sullivan*, for appellants.

*George E. Tanner, Michael R. Hauptman*, for appellees.