### A99A2429. CARTER v. GLENN et al.
(533 SE2d 109)

SMITH, Judge.

Alleging that a City of Lithonia police officer raped her, Yula Carter brought this action against the City of Lithonia, its mayor Marcia Woods Glenn, its police chief Jerome Woods, two unnamed police officers, and the alleged rapist, Police Officer Paul Wade. She asserted various state law claims as well as a federal civil rights claim under 42 USC § 1983. Wade and the other defendants answered and denied Carter's allegations.[1] After discovery, the city, Glenn, and Woods filed for summary judgment, asserting failure to file ante litem notice under OCGA § 36-33-5 and failure to demonstrate a claim under § 1983. The trial court granted both motions. We affirm the trial court's grant of summary judgment to the city, Glenn, and Woods on Carter's § 1983 claim, because Carter has failed to demonstrate acts in implementation of an intentional city policy or custom encouraging or condoning the commission of rape by its police officers. We also affirm the trial court's grant of summary judgment to the city on Carter's state law claims, because Carter failed to give the required ante litem notice. We must reverse the latter judgment as to Glenn and Woods, however, because the ante litem notice requirement by its terms applies only to the municipality itself.

1. We first consider Carter's § 1983 claims.

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

---

[1] The Georgia Bureau of Investigation and the District Attorney for the Stone Mountain Judicial Circuit investigated Carter's accusation, but Wade was never charged with the alleged offense. The prosecutor who investigated the accusation noted that it was made shortly after Wade participated in the arrest of Carter's boyfriend and other members of his family on drug charges.

42 USC § 1983 (1988). In *Monell v. Dept. of Social Svcs. &c.*, 436 U. S. 658, 690 (98 SC 2018, 56 LE2d 611) (1978), the United States Supreme Court held that local governments may be sued directly under § 1983 if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Id. "But a municipality cannot be held liable solely because it employs a tortfeasor. In other words, there is no respondeat superior liability under § 1983; rather, a plaintiff must point to some official policy or custom which resulted in the injury." (Citations and punctuation omitted.) *Watson v. Mayor &c. of Savannah*, 223 Ga. App. 399, 401 (1) (477 SE2d 667) (1996).

The plaintiff "must prove that the City deprived him of a constitutional right pursuant to an impermissible or corrupt policy which is intentional and deliberate." (Citations and punctuation omitted.) *Watson*, supra at 402. The alleged deficiency "must be closely related to the ultimate injury," because "[i]n virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city could have done to prevent the unfortunate incident." (Citations and punctuation omitted.) Id. at 401-402.

In addition to showing that the constitutional violation causally produced the injury, the plaintiff:

> must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. Some employee or agent must intend to act or refuse to act based upon such governmental policy.

(Citations, punctuation and emphasis omitted.) *Merritt v. Athens Clarke County*, 233 Ga. App. 203, 206 (2) (504 SE2d 41) (1998).

Assuming without deciding that Wade committed the offense and was acting under color of law, no evidence in the record shows that Wade's action was the result of "an impermissible or corrupt policy which was intentional and deliberate." *Watson*, supra at 402. Here, the police chief testified that the police department did not encourage or promote the commission of sexual assault by city police officers. The city police department policy and procedures manual states that officers are to use courtesy to all individuals and are prohibited from committing any violation of law and from engaging in "conduct on or off duty which has a tendency to destroy public respect

for the employee and/or the department and/or destroys confidence in the operation of the city service." Officers also receive 20 hours of police training according to Peace Officers' Standard Training (POST) guidelines. See *Lowe v. Jones County*, 231 Ga. App. 372, 374 (4) (499 SE2d 348) (1998).

Woods filed an affidavit stating that he was unaware of any complaints of sexual assault, harassment, or rape against Wade or any other Lithonia police officer for five years preceding Carter's alleged rape. In his deposition, Woods testified that Wade applied for a position as patrolman on March 21, 1995, approximately one month before the incident at issue here. Woods testified to the process involved in hiring Wade, including interviewing Wade, performing a criminal history check, calling an investigator at POST council, and calling Wade's former employers. On his job application, Wade disclosed an off-duty altercation with some neighbors in his front yard, resulting in a plea of nolo contendere by him to simple battery. Woods testified that Wade's background check revealed only the neighborhood altercation. Woods also testified that he spoke with several of Wade's superior officers with DeKalb County, who told him that Wade was "a good officer." A captain with the city police department testified that he performed a background check on Wade and also knew him personally from his service with DeKalb County as "a good officer." Some complaints of excessive force on Wade's part were made to the city police department *after* the alleged rape, and Wade was ultimately terminated by the police department for one of those incidents.

A very lengthy affidavit by an expert witness was filed on behalf of Carter in response to the city defendants' motion for summary judgment. This 44-page affidavit is not in the requisite form and is replete with hearsay, speculation, unsupported conclusions, legal opinions, vociferous argument, and personal remarks directed against the city defendants. Defendants moved to strike this affidavit on the basis of its content. At oral argument, defendants also objected that the affidavit was served upon them after discovery had expired without any response to their interrogatories, served on Carter over one year before, asking for disclosure of any expert witness. They thus had no opportunity to investigate or depose this expert. But we need not reach these issues because the affidavit contains no facts sufficient to establish the required direct causal link between any city policy and Wade's alleged crime. In addition, "no objective guidelines which might have been appropriate or facts which show the department's guidelines and training are inadequate were set out in his affidavit." (Citation, punctuation and emphasis omitted.) *Pearson v. City of Atlanta*, 231 Ga. App. 96, 100 (4) (a) (499 SE2d 89) (1998).

In addition to the misdemeanor battery revealed by Wade, the affidavit details complaints of tardiness, allegations of excessive force made to the city, and disciplinary complaints of excessive force filed against Wade in other police jurisdictions before his employment by the city. But these allegations were not known to the city until *after* the alleged incident with Carter. None of the complaints involved rape, sexual harassment, or any other sexual offense. See *Alpharetta First United Methodist Church v. Stewart*, 221 Ga. App. 748, 753 (3) (472 SE2d 532) (1996) (employer not liable for negligent hiring unless it knew or should have known of employee's "propensity for this type of alleged sexual misconduct"). Despite her expert's conclusory assertion that "rape is a violent crime," Carter has established no causal connection between the city's investigation of complaints of excessive force and the alleged crime of rape.

This case is therefore controlled by our recent decision in *Thompson v. Chapel*, 229 Ga. App. 537 (494 SE2d 216) (1997). Chapel, a county police officer, was convicted of the murder of Thompson. The wrongful death action against the county alleged a custom of ignoring standards for hiring and officer conduct on the part of county officials, allowing Chapel to remain on the job and, ultimately, to murder Thompson. The circumstances that the county allegedly ignored included a psychological test showing that Chapel had "anti-social tendencies," a garnishment for failure to pay child support, and an unproved allegation that Chapel conspired to rob a restaurant. We concluded that these incidents did not "cause" the alleged constitutional deprivation, did not constitute a "policy," and did not "provide a causal nexus sufficient to preclude summary judgment or show the requisite deliberate indifference to citizens' rights. At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged." (Citation and punctuation omitted.) Id. at 538-539.

Here, Carter asserts a connection between allegations of excessive force and one admitted instance of simple battery on the one hand, and an allegation of rape on the other. This alleged connection is even more attenuated than that alleged in *Thompson* between sociopathic tendencies and an alleged conspiracy to commit robbery on the one hand, and a conviction for murder on the other. Carter's repeated reliance on a case applying Alabama and federal law, *Parker v. Williams*, 862 F2d 1471 (11th Cir. 1989), overruled on other grounds, *Turquitt v. Jefferson County*, 137 F3d 1285, 1291 (11th Cir. 1998), succinctly demonstrates the tenuous nature of Carter's contention. In *Parker*, the sheriff hired a deputy with serious mental problems including multiple personality disorder, a history of drug use, and a conviction for indecent exposure, then promoted him to the post of chief jailer. The chief jailer later was convicted by a jury of

the kidnapping and rape of a female inmate. In contrast, none of the alleged incidents here involve any "type of alleged sexual misconduct," *Stewart*, supra at 753, and do not "provide a causal nexus sufficient to preclude summary judgment or show the requisite deliberate indifference to citizens' rights. [Cit.]" *Thompson*, supra at 538.

Carter contends that Woods or his captain should have investigated further and requested copies of Wade's disciplinary files not only from his most recent employer but from previous employers, even after personal assurances from Wade's former superiors and the captain's own personal knowledge of Wade. But even assuming that Carter had shown that the background investigation conducted by Woods was inadequate, this does not rise to the level of an intentional and deliberate policy. "Even negligence in the performance of official duties does not warrant redress under 42 USC § 1983." (Citations and punctuation omitted.) *Watson*, supra at 402. Such errors or omissions, even if proved, do not constitute gross negligence or deliberate indifference, and claims based upon them are not appropriate for resolution under 42 USC § 1983. The trial court did not err in granting summary judgment to the city, Glenn, and Woods on Carter's § 1983 claims.

2. We must next address Carter's state law claims and the propriety of the trial court's grant of summary judgment for failure to give the ante litem notice required by OCGA § 36-33-5. Carter's contentions on this issue are controlled by our recent decision in *Jacobs v. Littleton*, 241 Ga. App. 403, 405-406 (3) (a), (b) (525 SE2d 433) (1999), in two respects.

First, Carter contends that the time period for giving the ante litem notice was tolled by her mental incapacity. The ante litem notice statute, like a statute of limitation, may be tolled. *Jacobs*, supra at 406 (3) (b). But, as in *Jacobs*, Carter has failed to make the required showing to trigger the tolling statute. OCGA § 9-3-90 provides:

> Minors and persons who are legally incompetent because of mental retardation or mental illness, who are such when the cause of action accrues, shall be entitled to the same time after their disability is removed to bring an action as is prescribed for other persons.

Decisions construing this statute make plain that the application of the law is confined "to situations where it is not fair to charge a suitor with the running of the clock, because of his mental condition." *Chapman v. Burks*, 183 Ga. App. 103, 105 (1) (357 SE2d 832) (1987). While a plaintiff need not be so mentally incompetent that he should be confined, or require a guardian, he must be "so mentally incompe-

tent (non compos mentis or insane), so unsound in mind, or so imbecile in intellect, that he could not manage his ordinary affairs of life." (Punctuation omitted.) Id. "The test to be applied is whether the one claiming the disability has such unsoundness of mind or imbecility as to incapacitate one from managing the ordinary business of life." *Jacobs*, supra at 406. This determination may be made by the trial court as a matter of law, and the burden is on the plaintiff to prove incapacity. Id.

Here, Carter filed the affidavit of a psychiatrist, Dr. Honablue, who treated her for five months before September or October 1998, beginning approximately three years and four months after the alleged rape. Dr. Honablue opined that Carter suffered from "clinically significant distress in both her social and occupational areas of functioning." The psychiatrist also concluded that Carter was suffering from "symptoms of Post-Traumatic Stress Disorder"[2] and stated that as a result Carter "cognitively avoided any act that would require her to speak of or react to the rape" and "would not be in the proper frame of mind" to give notice to the city. But Dr. Honablue never stated an opinion that Carter was incapacitated from managing her ordinary affairs of life, either at the time ante litem notice was due or when she examined Carter three years later.

Mental conditions that fall short of the applicable legal standard of incompetence are insufficient to trigger the tolling provisions of OCGA § 9-3-90. *Stewart*, supra at 751-752 (1) (expert testimony that plaintiff suffered from "despondency, depression, and a borderline personality disorder" insufficient to toll statute of limitation). Carter never gave testimony by affidavit or otherwise averring that she met this legal standard. In addition, as in *Stewart*, Carter's deposition testimony demonstrates that she was competent to and did manage her ordinary affairs of life: She ran a business with her cousin and also worked for a temporary agency; she raised four children; and she became an assistant manager with a truck rental company. And Carter herself testified that there was never any time when she was not "mentally competent" and that she was able to take care of herself and "know what was going on." Expanding the definition of

---

[2] "Posttraumatic Stress Disorder" is described in the Diagnostic & Statistical Manual of Mental Disorders (4th ed. 1994) as "the development of characteristic symptoms following exposure to an extreme traumatic stressor involving direct personal experience of an event that involves actual or threatened death or serious injury. . . ." At 424. It is manifested by "persistent symptoms of anxiety . . . that were not present before the trauma." Id. at 425. *Southwire Co. v. George*, 266 Ga. 739, 740, n. 1 (470 SE2d 865) (1996). But "it has not yet been determined whether post traumatic stress disorder and rape trauma syndrome are admissible scientific principles in Georgia." *Prickett v. State*, 220 Ga. App. 244, 247 (3) (469 SE2d 371) (1996), overruled on other grounds, *State v. Belt*, 269 Ga. 763, 764, n. 1 (505 SE2d 1) (1998).

incompetence under the tolling statute to include a mental condition that renders one incompetent only as to assertion of the subject claim, rather than as to the ordinary affairs of life, would fundamentally alter Georgia law. We agree with the trial court that such a change is properly the role of the legislature rather than the courts.

Finally, Carter acknowledges on the record that she complained about the alleged rape to the police department on June 7, 1996. Substantial compliance with the requirements of the ante litem notice statute is sufficient, but oral notice is not, even if memorialized in writing by a city official. *Clark v. City of Smyrna*, 212 Ga. App. 598, 599 (1) (442 SE2d 461) (1994). "[F]ormal, written notice is required." (Punctuation and footnote omitted.) *Evans v. City of Covington*, 240 Ga. App. 373, 374 (1) (523 SE2d 594) (1999).

In effect, Carter seeks not merely a tolling of the ante litem notice statute but its complete abrogation. Her argument does not address the fact that she completely failed to satisfy the requirements of OCGA § 36-33-5, even after she was obviously able to and did orally report her allegations to the police department. The time for providing ante litem notice to the city therefore was not tolled by the provisions of OCGA § 9-3-90, and the trial court correctly granted summary judgment to the city.

We must, however, reverse the grant of summary judgment to the individual city defendants. Although the issue was not raised by the parties or the trial court, the ante litem notice statute is explicitly limited by its terms to the municipal corporation itself:

> No person, firm, or corporation having a claim for money damages against any *municipal corporation* on account of injuries to person or property shall bring any action against the *municipal corporation* for such injuries, without first giving notice as provided in subsection (b) of this Code section.

(Emphasis supplied.) OCGA § 36-33-5 (a). Here, as in *Jacobs*, supra, the trial court erred in granting summary judgment to the mayor and police chief based on failure to give ante litem notice.

> OCGA § 36-33-5 is in derogation of the common law and must be strictly construed. [Cit.] The statute requires notice only if the claim is against the municipality; it does not require ante litem notice to individual employees of a municipality. Thus, although the trial court properly granted summary judgment to the City . . . due to the . . . failure to provide ante litem notice, it improperly granted summary judgment to the individual city employee defendants on this ground.

Id. at 405 (3) (a). We must therefore reverse the summary judgment on behalf of the mayor and police chief based on Carter's failure to give ante litem notice on her state law claims.

*Judgment affirmed in part and reversed in part. Pope, P. J., and Miller, J., concur.*

## ON MOTION FOR RECONSIDERATION.

Appellees Glenn and Woods have moved for reconsideration of Division 2 of this opinion. They now acknowledge that ante litem notice applies only to the City of Lithonia. They contend, however, that summary judgment in their favor on Carter's state law claims was appropriate on other grounds and that we should therefore affirm.

We must decline to do so in the circumstances presented here. It is true that a trial court's grant of summary judgment will be affirmed if it is right for any reason. *Precise v. City of Rossville*, 261 Ga. 210, 211 (3) (403 SE2d 47) (1991). But this is true only "[i]f it is not apparent that the trial court relied on an erroneous legal theory." *Porquez v. Washington*, 268 Ga. 649, 652 (3) (492 SE2d 665) (1997). Moreover, we must also consider the general principle that the appellate courts do not consider issues not ruled on below. See *Ebon Foundation v. Oatman*, 269 Ga. 340, 343 (2) (498 SE2d 728) (1998). This is particularly true when, under the posture of the case, both parties did not have a full opportunity to present their arguments to this court.

Here, the trial court did not grant a general summary judgment that arguably included all the grounds raised by Glenn and Woods. It instead explicitly based its summary judgment solely on the erroneous basis that OCGA § 36-33-5 applied to the individual defendants. While appellees argue that Carter did not raise these issues on appeal, it is apparent that she had no reason to do so in the absence of a ruling from the trial court. Carter is not required to respond to a motion for reconsideration, and the time for doing so is both unspecified and short. Court of Appeals Rule 37 (b).

The multiple alternative arguments raised by Glenn and Woods are complex and fact-intensive. Since these issues were never ruled on below and therefore not raised on appeal, Carter has not had the opportunity to brief her arguments in full before this court. Given the multiplicity and complexity of the issues, we decline to address them without both parties having a full opportunity for notice and a hearing.

*Motion for reconsideration denied.*

DECIDED MARCH 29, 2000 —
RECONSIDERATION DENIED APRIL 13, 2000.

*James C. West III,* for appellant.
*Hawkins & Parnell, Michael J. Goldman, Michelle D. Coburn,* for appellees.