[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-10421
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 18, 2012
JOHN LEY
CLERK

D.C. Docket No. 5:10-cv-00069-LGW-JEG

JAMEL DEANGELO THOMPSON,

Plaintiff-Appellant,

versus

CORRECTIONS CORP. OF AMERICA,
TODD THOMAS,
in his individual and official capacity,
PEGGIE COOPER,
in her individual and official capacity,
MICHAEL WOODS,
JOSEPH RUSSELL,
in his individual and official capacity, et al.

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(June 18, 2012)

Before MARCUS, JORDAN, and BLACK, Circuit Judges.

PER CURIAM:

Jamel Thompson, a Georgia prisoner, appeals from the district court's adverse rulings on his civil rights complaint under 42 U.S.C. § 1983. The district court ruled that Mr. Thompson's deliberate indifference claim was barred by the applicable two-year statute of limitations, and that Mr. Thompson's mental issues did not warrant tolling. It therefore granted summary judgment in favor of the defendants on that claim. The district court also concluded that Mr. Thompson had failed to exhaust administrative remedies as to his retaliation claim. As a result, it dismissed that claim. Mr. Thompson now appeals, and we affirm.

I

In June of 2010, while confined at Georgia State Prison, Mr. Thompson filed a § 1983 lawsuit in the Southern District of Georgia. The lawsuit arose from Mr. Thompson's confinement at Coffee Correctional Facility, a correctional institution operated by Corrections Corporation of America as a contractor for Georgia. The deliberate indifference and retaliation claims are summarized below.

First, Mr. Thompson first alleged that he was savagely assaulted and beaten by another inmate at Coffee in September of 2007, that he previously had told Unit Manager Michael Woods that this inmate was threatening to kill him (because the

inmate incorrectly believed that Mr. Thompson had stolen his cd player), that Mr. Wood failed to do anything to protect him from the inmate, and that officials at Coffee failed to take any action against the inmate. Mr. Thompson asserted that Mr. Woods had been deliberately indifferent to the substantial risk of harm that he faced from the other inmate.

Second, Mr. Thompson alleged that CCA and several other Coffee officials – Todd Thomas, Peggie Cooper, Joseph Russell, and John Ferguson – refused to investigate his allegations due to retaliation. Mr. Thompson claimed that the retaliation was to get back at him for having prevailed on a grievance against Coffee.

II

We review the district court's summary judgment ruling de novo, applying the same Rule 56 standards as the district court. *See Citizens for Smart Growth v. Secretary of Dept. of Transportation,* 669 F.3d 1203, 1210 (11th Cir. 2012). The district court's rulings with respect to the statute of limitations, tolling, and the exhaustion of administrative remedies are also subject to plenary review, though there may be underlying factual issues that require resolution and preclude summary judgment. *See Arthur v. Thomas,* 657 F.3d 1257, 1261 n.3 (11th Cir. 2012) (statute of limitations); *Jackson v. Astrue,* 506 F.3d 1349, 1352 (11th Cir. 2007) (tolling); *Parcyk v. Prison Health Services,* 607 F.3d 1215, 1217 n.2 (11th Cir. 2010)

(exhaustion of remedies).

## III

The statute of limitations for Mr. Thompson's § 1983 deliberate indifference claim is that which Georgia provides for personal injury torts, *see Wallace v. Kato,* 549 U.S. 384, 387 (2007), and that limitations period is two years from the accrual of the right of action. *See* O.C.G. § 9-3-33; *Williams v. City of Atlanta,* 794 F.2d 624, 626 (1986). Mr. Thompson's deliberate indifference claim accrued as a matter of federal law in September of 2007, when he was assaulted by the other inmate despite having told Unit Manager Woods previously about the inmate's threats. At that time, Mr. Thompson had a "complete and present cause of action" against Unit Manager Woods. *See Kato,* 549 U.S. at 388 (internal quotation marks and citation omitted). Because Mr. Thompson did not file suit until June of 2010, the deliberate indifference claim is time-barred unless the limitations period was tolled.

Tolling of the limitations period in a § 1983 action is generally determined by reference to state law. *See id.* at 394. Under Georgia law, a statute of limitations is tolled for a person who is "legally incompetent because of mental retardation or mental illness" at the time a cause of action accrues, with the tolling continuing until the "disability is removed." *See* O.C.G. § 9-3-90(a). We have explained that under this statute the "test for mental incapacity is not whether one did not manage his own

4

affairs, acquiescing in the management thereof by others, or whether one has merely managed his affairs unsuccessfully or badly. That one was not 'bright' or not clear about some matters occurring during the period is not evidence of mental incapacity. *The test is one of capacity – whether the individual, being of unsound mind, could not manage the ordinary affairs of his life.*" *Lawson v. Glover,* 957 F.2d 801, 805 (11th Cir. 1987) (quoting *Curlee v. Mack Enterprises, Inc.,* 173 Ga. App. 594, 327 S.E.2d 736, 742 (1985)). A plaintiff who seeks tolling bears the burden of proving incapacity under Georgia law, and a court may determine incapacity as a matter of law. *See Carter v. Glenn,* 243 Ga. App. 544, 533 S.E.2d 109, 114 (2000).

In the district court, Mr. Thompson argued that he suffered from a mental incapacity from July of 2008 to June of 2010. The magistrate judge, while recognizing that Mr. Thompson "suffered from mental health issues," believed that tolling was not warranted because he had never been declared legally incompetent. *See* R2:59 at 3-4 & n.1.[1] The district court similarly noted that Mr. Thompson had mental health problems, but ruled that there was "no evidence before the court which indicates [he] was not able to manage the 'ordinary affairs of his life.' In fact, the

---

[1] The standard for incapacity used by the magistrate judge was likely not a correct statement of Georgia law, *see, e.g., Carter,* 533 S.E.2d at 114 (person need not be confined or require a guardian), but the error is harmless because the district court applied the correct standard.

evidence . . . reveals that, while [he] undoubtedly struggles with mental health issues, he has been able to function properly with medication." *See* R3:68 at 2. The district court also pointed out that, according to the medical records, Mr. Thompson's mental health issues began in 2002, and were not the result of the assault. *See id.*

Mr. Thompson argues that the district court committed several errors. First, he asserts that he suffered a separate mental incapacity in 2007 due to the assault, and that this incapacity consisted of features different from the 2002 incapacity. Second, he contends that the district court mistakenly ruled that there was no evidence showing that he was not able to manage the ordinary affairs of his life.

As Mr. Thompson asserts, there is some evidence that the 2007 assault caused him to suffer additional mental health problems. A department of corrections mental health evaluation form, dated November 9, 2007, states that Mr. Thompson's problems with depression began in 2002 and continued with daily symptoms of moderate intensity. The form also indicates, however, that Mr. Thompson was suffering from hallucinations and delusions and had tried to kill himself. In March of 2009, Mr. Thompson, who had stopped taking one of his medications (Risperdal), was found to exhibit some signs of psychosis. As a result, medical officials directed that Mr. Thompson resume taking Risperdal. In addition, a department of corrections comprehensive treatment plan dated April 20, 2010, states that Mr. Thompson was

diagnosed with major depressive disorder, "severe with psychotic features," as well as adjustment disorder with mixed anxiety and depressed mood. The plan also indicates that the 2007 assault was clinically significant, that Mr. Thompson was taking psychotropic medications, and that he had a history of suicide attempts.

Nevertheless, other information in the medical records showed that Mr. Thompson did not meet the standard set forth in § 9-30-90(a). In November of 2007, about two months after the assault, Mr. Thompson indicated in a mental health evaluation form that he was taking Prozac and Risperdal, which "help[ed] a little bit." The graduate intern who performed the evaluation and the clinical director who supervised the intern's work recommended that he receive outpatient treatment for his psychosis while in the general prison population, and noted that Mr. Thompson had a logical and coherent through process, no notable impairment of memory, average intellectual level and judgment, and fair insight. A semi-annual review that same month found that Mr. Thompson, though he had a major depressive disorder, had been functioning without major incidents in a general population dormitory. In a follow up evaluation in December of 2007, the graduate intern recommended that Mr. Thompson continue with his medications and receive monthly counseling. In February, May, July, and August of 2008, the doctor who evaluated Mr. Thompson concluded that he was not suicidal or depressed, and that he was not experiencing any

side effects from his medication. In September of 2008, a nurse reminded Mr. Thompson of the importance of taking his medications as directed. In October of 2008, during a psychiatric transfer evaluation, Mr. Thompson told medical officials that his medications helped him. The officials found him to be stable, and directed that he continue on his medication regimen. In December of 2008, Mr. Thompson said that he was getting along fairly well with his medications. Because he felt stressed out because he did not have a work assignment, he asked to be classified for a work detail. When examined in February of 2009, Mr. Thompson did not display any psychosis, suicidal intent, or serious depression.

On this record, the district court did not err in concluding that tolling was not warranted under § 9-3-90(a). We do not write on a blank slate, and precedent from the Georgia courts – which we look to under *Kato* and *Glover* – indicates that, though Mr. Thompson undoubtedly had mental problems both before and after the assault, under medication he was able to manage the ordinary affairs of his life. *See, e.g., Carter,* 533 S.E.2d at 114-15 (plaintiff suffering from post-traumatic stress disorder following rape was not entitled to tolling of statute of limitations even though treating psychiatrist opined that plaintiff cognitively avoided any act that would require her to speak of or react to the rape – there was no evidence that plaintiff was incapable of managing the ordinary affairs of her life, and "[m]ental conditions that fall short

of the applicable legal standard of incompetence are insufficient to trigger the tolling provision of . . . § 9-3-90"); *Charter Peachford Behavioral Health System, Inc. v. Kohout,* 233 Ga. App. 452, 504 S.E.2d 514, 524 (1998) (holding that tolling was not appropriate because, even if plaintiff had multiple personality disorder and was mentally ill, she was able – though with emotional difficulty and while sometimes hospitalized for treatment – "carry on her daily ability to make decisions").

IV

Mr. Thompson filed informal grievances at Coffee on May 27 and June 1, 2010, alleging that his family had just told him that officials were refusing to further investigate the 2007 assault, and that those officials refused to allow him to keep winning grievances against Coffee.[2] Those informal grievances were rejected, respectively, on June 1 and June 3, 2010, in part because they were untimely.

As the magistrate judge saw it, Mr. Thompson had not properly exhausted his administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), with respect to his retaliation claim. Contrary to the applicable grievance procedures, he had filed his informal grievances more than 10 days after the date after

---

[2] According to Mr. Thompson's family, Ms. Cooper was one of the officials who made the statement, and she and the others specifically referred to the $50 that Mr. Thompson had been awarded in a prior grievance over the loss of his property.

he knew or should have known of the facts giving rise to the grievance. The magistrate judge further explained that Mr. Thompson's informal grievances were submitted just a couple of weeks before the § 1983 lawsuit was filed, and therefore Mr. Thompson had not completed the formal grievance procedure that was to follow the informal grievance procedure. As a result, he had not let the administrative process run its course. *See* R2:59 at 5-7.

The district court also concluded that the informal grievances were submitted well after the requisite 10-day period and only a short time before the complaint was filed. Thus, Mr. Thompson had not properly exhausted his administrative remedies. *See* R3:68 at 2-3.

On appeal, Mr. Thompson argues that there is no evidence showing that he knew, prior to June 1, 2010, that officials at Coffee were refusing to investigate the 2007 assault as retaliation for the $50 Mr. Thompson won in a prior grievance. As a result, he says, his informal grievances were filed within the 10-day window.

Assuming Mr. Thompson is correct on the timeliness of his informal grievances, we nevertheless conclude that he did not properly exhaust the available administrative remedies. Under § 1997e(a), "a prisoner must exhaust *all* available administrative remedies before bringing a federal action challenging prison conditions." *Parcyk v. Prison Health Services, Inc.,* 627 F.3d 1215, 1217 (11th Cir.

2010). Thus, once the officials at Coffee rejected his informal grievances, Mr. Thompson had to go to the next step of the process and file formal grievances. *See* R2:46 at Exh. C (Affidavit of Lisa Trowell, Grievance Coordinator at Coffee); R2:56 at 5-6 (Georgia Department of Corrections grievance procedures); *Turner v. Burnside,* 541 F.3d 1077, 1080-81 (11th Cir. 2007) (explaining three-tier grievance procedures for Georgia Department of Corrections); *Boggee v. Roberts,* 430 Fed. Appx. 753, 755-56 (11th Cir. 2001) (unpublished) (same). But he failed to do this, and instead filed his § 1983 lawsuit prematurely. As a result, the retaliation claim was properly dismissed. *See Booth v. Churner,* 206 F.3d 289, 292-93, 299 (3rd Cir. 2000) (prisoner who did not seek relief in second and third tiers of three-tiered grievance system did not exhaust his administrative remedies), *aff'd,* 532 U.S. 731 (2001); *West v. Higgins,* 346 Fed. Appx. 423, 425 (11th Cir. 2009) (unpublished) (dismissing Georgia prisoner's claim, for failure to exhaust administrative remedies, in part because he had failed to file a formal grievance).

V

The district court's rulings on Mr. Thompson's deliberate indifference and retaliation claims are affirmed.

**AFFIRMED.**