**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**July 9, 2012**

# In the Court of Appeals of Georgia

A12A0549. MARTIN v. HERRINGTON MILL, LP.

DILLARD, Judge.

In this premises-liability action, Catherine Martin sued the owner of her apartment complex, Herrington Mill, LP, alleging that she was sexually assaulted as a result of Herrington Mill's failure to, *inter alia*, keep its premises safe. Herrington Mill filed a motion for summary judgment, arguing that Martin's claims were barred by the applicable statute of limitation. The trial court granted Herrington Mill's motion, and Martin now appeals, contending that genuine issues of fact exist as to whether she suffered mental incapacity sufficient to toll the statute of limitation. For the reasons set forth *infra*, we affirm the trial court's grant of summary judgment in favor of Herrington Mill.

Viewed in the light most favorable to Martin (*i.e.*, the nonmoving party),[1] the record shows that on April 14, 2007, an unknown assailant broke into Martin's Herrington Mill apartment and sexually assaulted her. Nearly 20 years prior to this assault, Martin was diagnosed as suffering from depression and an anxiety disorder, and as recently as 2006, she sought in-patient psychiatric treatment for those problems. A few weeks after the assault, Martin was diagnosed with post-traumatic stress disorder ("PTSD") and began psychological counseling sessions for treatment related to the assault, as well as her other mental-health issues, with a licensed clinical social worker. For the most part, these counseling sessions took place in Martin's home, but in October 2008, she again voluntarily sought in-patient psychiatric treatment for her depression and anxiety disorder and was therefore hospitalized for two weeks.

On December 7, 2009, Martin filed suit against Herrington Mill, alleging, *inter alia*, that its failure to keep the apartment-complex premises safe resulted in the unknown assailant breaking into Martin's apartment and sexually assaulting her. And

---

[1] *See, e.g.*, *McCaskill v. Carillo*, 263 Ga. App. 890, 890 (589 SE2d 582) (2003) ("On appeal from the grant or denial of a motion for summary judgment, we review the evidence de novo, and all reasonable conclusions and inferences drawn from the evidence are construed in the light most favorable to the nonmovant.").

recognizing that her complaint was filed nearly eight months after the applicable two-year statute of limitation[2] had expired, Martin also alleged that the limitation period for her claims was tolled by her mental incapacity, pursuant to OCGA § 9-3-91. A short discovery period ensued, during which Martin, her treating psychiatrist, and her social worker counselor were deposed. Thereafter, Herrington Mill filed a motion for summary judgment, arguing that Martin had failed to show that she had suffered mental incapacity sufficient to toll the statute of limitation, and thus, her claims were time-barred. The trial court agreed and granted Herrington Mill's motion. This appeal follows.

Martin contends that the trial court erred in granting summary judgment to Herrington Mill. Specifically, she argues that genuine issues of fact exist as to whether she suffered from mental incapacity during the period between the sexual assault and the filing of her complaint sufficient to toll the statute of limitation. We disagree.

At the outset, we note that summary judgment is proper "when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of

---

[2] *See* OCGA § 9-3-33 ("Actions for injuries to the person shall be brought within two years after the right of action accrues . . . .").

3

law."[3] In addition, a *de novo* standard of review applies to an appeal from a grant or denial of summary judgment, "and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant."[4] With these guiding principles in mind, we will now address Martin's claims of error.

Under OCGA § 9-3-90 (a), "persons who are legally incompetent because of . . . mental illness, who are such when the cause of action accrues, shall be entitled to the same time after their disability is removed to bring an action as is prescribed for other persons."[5] OCGA § 9-3-31 further provides that "[i]f any person suffers a disability specified in Code Section 9-3-90 after his right of action has accrued and the disability is not voluntarily caused or undertaken by the person claiming the benefit thereof, the limitation applicable to his cause of action shall cease to operate during the continuance of the disability."[6]

---

[3] *Ellis v. Ingle*, 306 Ga. App. 674, 675 (703 SE2d 104) (2010); *see* OCGA § 9-11-56 (c).

[4] *Ellis*, 306 Ga. App. at 675.

[5] *See* OCGA § 9-3-90 (a); *see also Walker v. Brannan*, 243 Ga. App. 235, 236 (533 SE2d 129) (2000).

[6] *See* OCGA § 9-3-91.

This Court has previously held that decisions construing the foregoing statutes "make plain that the application of the law is confined to situations where it is not fair to charge a suitor with the running of the clock, because of [her] mental condition."[7] And while a plaintiff need not be so mentally incompetent that she requires confinement or a guardian, she must be so mentally deficient (*non compos mentis* or insane), so unsound in mind, or so diminished in intellectual capacity, that she is incapable of managing the "ordinary affairs of life."[8] Thus, the test to be applied is whether "the one claiming the disability has such unsoundness of mind . . . as to incapacitate one from managing the ordinary business of life."[9] Importantly, this determination "may be made by the trial court as a matter of law, and the burden is on the plaintiff to prove incapacity."[10]

In the case *sub judice*, Martin testified that immediately after the sexual assault she summoned the courage to assist the police in their investigation and was able to

---

[7] *Carter v. Glenn*, 243 Ga. App. 544, 548 (2) (533 SE2d 109) (2000) (punctuation omitted); *see Chapman v. Burks*, 183 Ga. App. 103, 105 (1) (357 SE2d 832) (1987).

[8] *Carter*, 243 Ga. App. at 548-49 (2) (punctuation omitted).

[9] *Id.* at 549 (2) (punctuation omitted).

[10] *Id.*

5

respond to questions posed by counselors at the rape-crisis center. And in the months between the time the assault occurred and the filing of her lawsuit, Martin stated that she renewed her lease for the same apartment several times, which included completing the various HUD Section 8 forms so that she could receive rent subsidies. Martin further testified that during this time period her sister stayed with her for two weeks while Martin helped her recover from back surgery. In addition, Martin testified that she purchased a car, which required obtaining financing and making payments each month. She also testified that she maintained two mobile-phone accounts; used a computer to send emails, engaged in social networking, conducted online banking; and that she maintained her banking account by writing checks and making deposits. Martin acknowledged that she considered filing a premises-liability action against Herrington Mill within a month or two after the incident but decided against doing so at that time for financial reasons. And over the course of the months following the incident, Martin wrote numerous letters to the apartment complex's property manager to discuss possibly moving to a different apartment and to point out the complex's lack of security and other deficiencies. In fact, while Martin testified that her depression, anxiety disorder, and PTSD caused her significant difficulties, her testimony indicated that the only time during which she was completely unable

6

to manage her own affairs was the two-week period in October 2008 when she voluntarily sought hospitalization for treatment of those mental-health issues. Thus, other than this two-week period, Martin's own testimony demonstrates that she was able to manage the ordinary affairs of life following her tragic assault.[11]

Nevertheless, citing *Tri-Cities Hospital Authority v. Sheats*,[12] Martin argues that the testimony of the social worker—who has been providing her with psychological counseling—created a question of fact as to whether she was mentally incapacitated for at least part of the time following the assault. Specifically, Martin asserts that the summary judgment is precluded based on the social worker's

---

[11] *See Walker*, 243 Ga. App. at 237-38 (affirming grant of summary judgment based on plaintiff's failure to toll the statute of limitation given the fact that plaintiff's deposition showed that she was not mentally incapacitated but was able to manage her ordinary affairs of life during period following her accident); *Jacobs v. Littleton*, 241 Ga. App. 403, 406 (3) (b) (525 SE2d 433) (1999) (affirming summary judgment based on trial court's finding that plaintiff's own deposition testimony rebutted claim of mental incapacity and showed that she was able to manage day-to-day affairs); *Alpharetta First United Methodist Church v. Stewart*, 221 Ga. App. 748, 752 (1) (472 SE2d 532) (1996) (reversing denial of summary judgment because, *inter alia*, plaintiff's deposition affirmatively showed she was capable of managing the ordinary affairs of life); *Curlee v. Mock Enters., Inc.*, 173 Ga. App. 594, 598-99 (3) (327 SE2d 736) (1985) (affirming grant of summary judgment based on plaintiff's failure to toll the statute of limitation because record was replete with evidence that plaintiff was able to manage his own affairs following the accident).

[12] 156 Ga. App. 28 (273 SE2d 903) (1980).

testimony that Martin's mental-health problems rendered her unable to manage the ordinary affairs of life for about half of the time between the assault and when she filed her complaint, which was two years and nearly eight months later.[13] We find this argument unavailing.

We have previously held that diagnoses of depression, despondency, borderline personality disorder, and even PTSD, *without additional evidence that a plaintiff was unable to manage the ordinary business of life*, are mental conditions that fall short of the applicable legal standard of incompetence and, thus, are insufficient to trigger the tolling provisions of OCGA § 9-3-90.[14] And although at one point during her deposition, the social worker did state that Martin was unable to manage the ordinary affairs of life for about half of the time between the assault and when she filed her complaint, that testimony was belied by Martin's own testimony, which demonstrated

---

[13] *See id.* at 31 (holding that despite plaintiff's deposition testimony indicating that he was able to manage the affairs of ordinary life, plaintiff's somewhat contradictory affidavit that he was mentally incapacitated created a question of material fact).

[14] *See Carter*, 243 Ga. App. at 549 (2) (holding that plaintiff's PTSD diagnosis by itself did not constitute mental incapacity sufficient to toll the statute of limitation); *Stewart*, 221 Ga. App. at 751-52 (1) (holding that plaintiff's diagnosis of depression, despondency, and a borderline personality disorder was insufficient to toll statute of limitation).

8

that, with the exception of two weeks in October 2008, Martin did, in fact, manage the day-to-day affairs of her life. Indeed, the social worker even testified that she was aware of many of the examples of Martin capably managing her own affairs.

Moreover, and contrary to Martin's contention on appeal, the social worker's testimony can hardly be characterized as unequivocal. Prior to her statement that Martin could only manage her affairs about half of the time, the social worker was asked if she believed that Martin was mentally incapable of taking care of herself at any time between April 2007 and December of 2009, and she responded by stating,

> No. . . . I believe that if she had only herself to cope with, she could take care of herself. I think it is all of these outside pressures from her family. Of course, the rape didn't help, but I am, I'm saying the people that rely on her or that she perceives them as relying on her and they certainly find her when they need something. So my answer is I think that if she were on her own separated from the stressors that are relevant, that seem to be coming from the family, she probably could get her life back together. And she is dealing with a lot.

Later, the social worker acknowledged that at times Martin is able to overcome her difficulties and manage her affairs but that she often puts the needs of others, particularly family members, before her own. Such testimony is evidence "of one who has merely failed to take control of or simply mismanaged the ordinary affairs of life

rather than of an individual lacking in the capacity to manage [her] own affairs."[15] Furthermore, the social worker conceded that it is difficult to quantify the amount of time that Martin could not manage her own affairs and similarly admitted that she could not answer whether Martin's alleged incapacity would have rendered her unable to seek legal assistance with regard to the sexual assault. Thus, much of the social worker's testimony constituted estimates or speculation, but "[a] shadowy semblance of an issue is not enough to defeat the motion for summary judgment."[16]

As we have previously noted, OCGA § 9-3-90 serves "the legitimate and laudable purpose of protecting those who are in fact legally incompetent because of mental illness or disability."[17] However, as we have also rightly emphasized, "OCGA § 9-3-33 and other statutes of limitation also serve the legitimate public policy goal of promoting justice and furthering the certainty of time limitations while preventing unfair surprise."[18] Here, there was significant evidence, including her own testimony,

---

[15] *Curlee*, 173 Ga. App. at 599 (3).

[16] *Anglin v. Harris*, 244 Ga. App. 140, 142 (1) (534 SE2d 874) (2000) (punctuation omitted).

[17] *Walker*, 243 Ga. App. at 238; *see Anglin*, 244 Ga. App. at 144 (2).

[18] *Walker*, 243 Ga. App. at 238-39; *see Anglin*, 244 Ga. App. at 144 (2).

10

that Martin was capable of managing the ordinary affairs of life during the time between the assault and the filing of her complaint. And other than the two-week period during which she was hospitalized, the only evidence that Martin was mentally incapacitated was equivocal and speculative. Given that Martin did not file her complaint until nearly *eight months* after the statute of limitation had run, the fact that the statute was tolled for two weeks is of no consequence. Accordingly, the trial court did not err in finding that Martin failed to show mental incapacity sufficient to toll the statute, and summary judgment in favor of Herrington Mill was warranted.[19]

*Judgment affirmed. Ellington, C. J., and Phipps, P. J., concur.*

---

[19] *See Stewart*, 221 Ga. App. at 752 (1).