[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-14895
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 18, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:08-cv-00065-WLS

PETER A. BUGGE,
Executor of the Estate of JOHN C. BRADFORD,
TROY P. CRUMBLEY,

Plaintiffs-Appellants,

versus

KEVIN ROBERTS, Warden,
DANNIE THOMPSON, Warden,
CHRISTINE CROSS, Deputy Warden,
JEFF JEFFERSON, Deputy Warden,
CHRISTOPHER WESLEY, Lt.,
et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(May 18, 2011)

Before BARKETT, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

This 42 U.S.C. § 1983 action, alleging violations of the Eighth Amendment to the United States Constitution, arises from inmate-on-inmate violence at Calhoun State Prison ("CSP") in Morgan, Georgia. Former inmate John C. Bradford was stabbed to death by another inmate at CSP on July 5, 2006, and approximately one week later, former inmate Troy C. Crumbley was brutally attacked by another inmate at CSP. Based on these tragic events, Crumbley and the executor of Bradford's estate, Peter A. Bugge, brought this suit against several former and current CSP employees: Former Warden Kevin Roberts, Warden Danny Thompson, Deputy Warden Christine Cross, Deputy Warden Jeff Jefferson, Lieutenant Christopher Wesley, Lieutenant Eula Battle, Sergeant Anthony Cox, Sergeant Eddie Smith, Officer Dewayne Booker, Officer Derrick McDaniels, Officer William McGinnis, and Officer Horace Gilbert. The district court dismissed Crumbley's claims for failing to exhaust his administrative remedies, and granted summary judgment in favor of the defendants on Bugge's claims. Crumbley and Bugge appeal those decisions.

## I. Crumbley[1]

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner . . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).  The PLRA merely requires "[c]ompliance with prison grievance procedures . . . to 'properly exhaust'" them.  Jones v. Bock, 549 U.S. 199, 218 (2007)  "An inmate incarcerated in a state prison, thus, must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983."  Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999).

According to the evidence in record, the GDC administrative grievance procedures consist of an informal grievance, a formal grievance, and an appeal. The inmate must file an informal grievance form no later than ten days from the

---

[1] We review de novo the district court's dismissal of a lawsuit for failure to exhaust available administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.  Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000).  The district court's findings of fact are reviewed for clear error.  Bryant v. Rich, 530 F.3d 1368, 1377 (11th Cir. 2008).

date the inmate knew or should have known of the facts giving rise to the grievance, but prison officials can waive that timeliness requirement for good cause shown. Inmates are only given a formal grievance form after they have fulfilled their obligation to first utilize the informal grievance process, and have five days from receipt of the resolution of the informal grievance to file the formal grievance. The last step in the grievance process is an appeal, but a grievance rejected as out-of-time may not be appealed.

Crumbley argues that he exhausted all of his available administrative remedies, and thus the district court improperly dismissed his claims pursuant to 42 U.S.C. § 1997e(a). We agree. It is uncontested that prison officials at Washington State Prison ("WSP"), where Crumbley had been relocated, accepted an untimely informal grievance on November 1, 2006, for good cause shown. Having met the good cause standard prior to filing his federal lawsuit, Crumbley effectively exhausted his administrative remedies as to this step in the grievance procedures. See Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005) ("Prisoners must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures before filing a federal claim.") (emphasis added). That Crumbley complied with this initial step is further shown by the fact that WSP officials gave him a formal grievance form, which is only

4

issued to those inmates who successfully complete the informal grievance step.

Once Crumbley's informal grievance was accepted for filing, Crumbley filed a formal grievance the next day. However, officials at CSP denied the formal grievance as out-of-time, and informed Crumbley that he could not appeal. We disagree with this conclusion, because Crumbley filed his formal grievance form within the five-day period required by the grievance procedures. As Crumbley was not allowed to appeal the denial of his formal grievance, he was not required to file an appeal in order to exhaust his administrative remedies. See Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (holding that an inmate is not required, in order to exhaust administrative remedies, to appeal an institution-level denial when he is unambiguously told that he may not appeal). Thus, because Crumbley complied with the grievance procedures applicable to him, he properly exhausted his administrative remedies. Accordingly, the district court erred in dismissing his claims pursuant to 42 U.S.C. § 1997e(a).

## II. Bugge[2]

We begin our analysis of Bugge's claims by reviewing the circumstances of

---

[2] We review a district court's order granting summary judgment de novo, "examining the evidence in the light most favorable to the non-moving party." Schwarz v. City of Treasure Island, 544 F.3d 1201, 1211 (11th Cir. 2008). "Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Jean-Baptiste v. Gutierrez, 627 F.3d 816, 820 (11th Cir. 2010).

Bradford's murder. Before lunch on July 5, 2006, Bradford, a fifty-two-year-old white male, and his cell-mate, Stephen Johnson, went to the prison store to buy some goods and then brought them back to their cell. During lunchtime, Bradford remained in the cell out of fear that the goods would be stolen if he left for lunch. While Bradford was waiting in the cell, inmate Charles Fanning gained entry to the cell, intending to steal some of the goods that Bradford and Johnson had bought. Bradford and Fanning, who is black and is a member of a gang called the Black Gangsta Disciples, then argued with each other, using racial epithets and threatening each other. After the argument, Bradford told an unidentified prison official that there would be "trouble" if he and Fanning were not kept away from each other. Johnson then suggested several times to Bradford that they enter protective custody, but Bradford rejected the idea and never made a request for protective custody.

Later that day, Bradford left the cell to retrieve his mail. When he was returning to his cell, Fanning hit him on the head and knocked him to the floor. Johnson tried to pull Bradford into the cell and shut the door, but Fanning and another inmate forced the door open, dragged Bradford underneath the lockers, and stabbed him in the chest with a shank. Fanning and his accomplice then stole the store-bought goods from Bradford and Johnson.

6

Johnson attempted to get help for his cell-mate, but Fanning and other inmates blocked him. Prison officials eventually learned of Bradford's condition during a prison inspection. Bradford was pronounced dead soon thereafter at Calhoun Memorial Hospital. Following these tragic events, Bugge exhausted the GDC administrative procedures and filed this § 1983 suit.

Section 1983 provides a cause of action for anyone subjected "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by a person acting under color of state law. 42 U.S.C. § 1983. The Eighth Amendment imposes a duty on prison officials to provide "humane conditions of confinement," and to "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994). In particular, prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." Id. at 833. "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment," id. at 828, and thus gives rise to a § 1983 claim.

To survive summary judgment on such a § 1983 claim, a plaintiff must "produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation. Hale v. Tallapoosa Cnty., 50 F.3d 1579, 1582 (11th Cir. 1995). The first element is an

7

objective standard.  Hudson v. McMillian, 503 U.S. 1, 8-9 (1992).  "[O]nly those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation."  Id. at 9 (quotation marks omitted).  As we have explained,

> . . . an excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm; occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment, but confinement in a prison where violence and terror reign is actionable.

Purcell v. Toombs Cnty., 400 F.3d 1313, 1320 (11th Cir. 2005) (quotation marks and alteration omitted).

The second element, "deliberate indifference," is a subjective standard having three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999).  Regarding this element, the Supreme Court in Farmer held,

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

511 U.S. at 837.  Following Farmer, we have stated that

8

> [a] prison official cannot avoid liability under the Eighth Amendment "by showing that . . . he did not know the complainant was especially likely to be assaulted by the *specific prisoner* who eventually committed the assault." [Farmer, 511 U.S.] at 843. This is because "[t]he question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health.'" Id. (quoting Helling v. Mckinney, 509 U.S. 25, 35 (1993)).

Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 617 (11th Cir. 2007). Thus, it does not matter "whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." Farmer, 511 U.S. at 843.

> If, for example, prison officials were aware that inmate rape was so common and uncontrolled that some potential victims dared not sleep but instead . . . would leave their beds and spend the night clinging to the bars nearest the guards' station, it would obviously be irrelevant to liability that the officials could not guess beforehand precisely who would attack whom.

Id. (quotations, alterations, and citations omitted).

A defendant, however, may escape liability if he did not have subjective knowledge of the risk to begin with. Id. at 844. Ths subjective knowledge must be specific, as we have held that "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference." Burnette v. Taylor, 533 F.3d

9

1325, 1331 (11th Cir. 2008).  This question of "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact," and such knowledge may be inferred based on the obviousness of the risk.  Farmer, 511 U.S. at 842, 844-45.

Bugge argues that the district court improperly granted summary judgment in favor of the defendants because the evidence showed that the defendants were deliberately indifferent to a substantial risk of serious harm posed to Bradford at CSP.  He identifies two such risks: (1) the individualized risk of harm Bradford faced from Fanning, the inmate who killed him; and (2) the risk of harm Bradford faced at CSP due to the allegedly dangerous prison conditions.  We address each of these arguments in turn.

### A.  Individualized Risk Based on Specific Threats

Bugge first contends that the unidentified prison official who was warned about the need to separate Fanning and Bradford was deliberately indifferent by failing to place Bradford in protective custody in response to the warning, which resulted in Bradford's death at the hands of Fanning.  The district court granted the defendants summary judgment on this claim for two reasons: first, Bradford's warning to the prison official was too vague to provide the official with actual knowledge of a substantial risk of serious harm to Bradford, and thus Bugge failed

10

to satisfy the deliberate indifference element of the claim; and second, Bugge failed to satisfy the causation prong because he could not identify the prison official to whom Bradford gave the warning.

We agree with the district court that this claim fails on the deliberate indifference prong. Regardless of whether Bradford's warning to an unidentified prison official was detailed enough to provide the official with adequate knowledge of a specific, substantial risk of serious harm to Bradford from Fanning, Bugge has not provided any evidence showing that any one of the defendants received the warning. Thus, Bugge cannot prove that any one of the defendants actually possessed the requisite knowledge to be held liable. Burnette, 533 F.3d at 1331 ("[I]mputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each individual [d]efendant must be judged separately and on the basis of what that person knows.").[3] Accordingly, the district court properly granted the defendants summary judgment on Bugge's claims that the defendants were deliberately indifferent to a substantial risk of serious harm posed to Bradford arising from his individual situation.

_____

[3] Moreover, the unidentified official's failure to place Bradford in protective custody did not cause Bradford's death. This is because Bradford's cell-mate, Stephen Johnson, repeatedly urged Bradford to request protective custody following his confrontation with the other inmate, but Bradford declined. Thus, the prison official cannot be faulted for failing to urge Bradford to accept protective custody, because the evidence shows that Bradford would have rejected such a suggestion prior to his fatal attack.

11

B.  Environmental Risk Based on Dangerous Prison Conditions

Next, Bugge argues that the defendants were deliberately indifferent to a substantial risk of harm posed to Bradford due to dangerous prison conditions at CSP, and that the defendants' deliberate indifference to those conditions caused the attack that resulted in Bradford's death.  The district court granted summary judgment in favor of the defendants because it concluded that Bugge failed to satisfy the objective component of the claim, finding that there was insufficient summary judgment evidence to demonstrate that the prison conditions at CSP posed an objectively substantial risk of serious harm.[4]  Although we think it is a close call, we must disagree with the district court's conclusion.

According to Bugge's evidence, numerous racially charged robberies occurred at CSP, particularly of store-bought goods; there were "hundreds" of weapons in the prison, and almost every inmate in Bradford's dormitory owned or had access to a shank; prison officials refused to discipline inmates for possessing weapons; and gangs, which operated in every dormitory, were extremely violent, stealing, robbing, and committing acts of violence against white inmates in

---

[4] Although the district court's analysis of this claim appears in several different sections of the opinion addressing different elements of the claim, it all centers on the objective component of the claim: whether the summary judgment evidence demonstrated that the prison conditions posed a substantial risk of serious harm to Bradford.

12

particular. There is also evidence that officials encouraged inmates to obtain weapons for protection, due to the dangerous conditions at CSP. Notably, the defendants did not provide any evidence refuting that these conditions existed.

Our decisions clearly establish that this evidence, at the very least, is sufficient to create a jury question on whether a substantial risk of serious harm existed at CSP. See,e.g., Marsh v. Butler County, Ala., 268 F.3d 1014, 1033 (11th Cir. 2001); Hale, 50 F.3d at 1583; Williams v. Edwards, 547 F.2d 1206 (5th Cir.1977).[5] In Hale, for example, the plaintiff "produced evidence that inmate-on-inmate violence occurred regularly." 50 F.3d at 1583. Here, Bugge has produced evidence that inmate-on-inmate robberies of the type that resulted in Bradford's death happened regularly at CSP. Further, in Marsh and Williams, the plaintiffs presented evidence that there was widespread possession of weapons by inmates and that weapons were not confiscated from prisoners. Marsh, 268 F.3d at 1033; Williams, 547 F.2d at 1211. Bugge presented the same evidence here. Finally, Bugge presented evidence that powerful gangs committed racially charged violent acts against white prisoners like Bradford.[6] This dangerous mixture of regular

_____

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981), this court adopted all decisions of the Fifth Circuit handed down prior to close of business on September 30, 1981 as binding precedent in this circuit.

[6] The defendants argue that this evidence of gang violence should be discounted on the ground that some of it suggests that the violence was more prevalent in a different dormitory than

13

robberies, widespread weapons possession by inmates, and unchecked racially

charged gang violence erupted in a predictable way that lead to Bradford's death.

Viewing this evidence in the light most favorable to Bugge, genuine issues of

material fact remain as to whether a substantial risk of serious harm existed at

CSP.[7]  The district court, therefore, erred in ruling that the defendants were

entitled to summary judgment on the ground that no substantial risk of serious

harm existed.[8]

However, all the defendants except for Warden Roberts are nonetheless

entitled to summary judgment on these claims, because Bugge presented no

evidence that any of the defendants, except for Warden Roberts, had any

_____

the one that housed Bradford.  The fact remains, however, that the gang violence was widespread at the prison, and the defendants cite no authority for the proposition that the conditions at a prison should be analyzed on a dormitory-by-dormitory basis.

[7] That no identical stabbing death had occurred at CSP immediately prior to this one is of no consequence, as the Supreme Court has instructed that "an Eighth Amendment violation can arise from unsafe conditions of confinement even if no assault or similar physical injury has yet occurred."  Marsh, 268 F.3d at 1034 (citing Helling v. McKinney, 509 U.S. 25, 33 (1993)).

[8] The defendants also raised a qualified-immunity defense when moving for summary judgment.  For Bugge to overcome that defense at summary judgment, the evidence, when viewed in the light most favorable to Bugge, must "make out a violation of a constitutional right," and "the right at issue [must have been] 'clearly established' at the time of defendant's alleged misconduct."  Pearson v. Callahan, 555 U.S. — , 129 S.Ct. 808, 816 (2009).  The district court, in granting the defendants' motion for summary judgment, effectively ruled, without saying so, that Bugge failed to satisfy the first prong, i.e., he failed to show that Bradford's constitutional rights were violated.  As our discussion above indicates, we disagree with this conclusion, and additionally find that, based on Marsh, Hale, and Williams, the constitutional right at issue was clearly established at the time of the defendants' alleged misconduct.

responsibility for the conditions at CSP, or could have taken reasonable steps to the lessen the substantial risk of serious harm that existed there. In fact, Bugge failed to present any evidence of the other defendants' roles at CSP. Bugge's claims against these defendants, therefore, fail on the causation prong: there is no evidence connecting them to the relevant prison conditions or Bradford's murder.

Regarding Bugge's claims against Warden Roberts, though, there is evidence that he was aware of the dangerous conditions at CSP, and as Warden, he clearly had the power to take reasonable steps to address them.[9] Bugge presented evidence that several inmates wrote to Roberts to inform him of the dangerous prison conditions. Moreover, the evidence shows that Roberts failed to discipline inmates for possessing weapons or engaging in gang violence. Finally, the pervasive and widespread nature of the conditions that the evidence shows existed suggest that Roberts "had been exposed to information concerning the risk and thus 'must have known about it," which "could be sufficient to permit a trier of fact to find that [Roberts] had actual knowledge of the risk." Farmer, 511 U.S. at842-43. Viewing this evidence in the light most favorable to Bugge, genuine

---

[9] We note that Warden Roberts left his post at CSP on July 2, 2006, and that Warden Thompson took over on July 5, 2006, the day of Bradford's murder. Thompson, therefore, had no opportunity to learn about or address the conditions that existed when Roberts left immediately before the murder.

issues of material fact exist as to the remaining elements of Bugge's claim against Roberts—deliberate indifference and causation—and thus the district court erred in granting Roberts summary judgment on that claim.

Accordingly, we vacate the dismissal of Crumbley's claims; affirm summary judgment in favor of all the defendants except for Warden Roberts on Bugge's claims; vacate summary judgment in favor of Warden Roberts on Bugge's claim; and remand for further proceedings consistent with this opinion.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**