[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-11056
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 6, 2012
JOHN LEY
CLERK

D.C. Docket No. 2:07-cv-14122-JEM

CITIZENS FOR SMART GROWTH,
a Florida Non Profit Corporation,
ODIAS SMITH,
an individual,
KATHIE SMITH,
an individual,

                                                      Plaintiffs - Appellants,

versus

SECRETARY of the DEPARTMENT OF TRANSPORTATION,
J RICHARD CAPKA,
ADMINISTRATOR, FEDERAL HIGHWAY ADMINISTRATION,
DIVISION ADMINISTRATOR, FEDERAL HIGHWAY
ADMINISTRATION, FLORIDA DIVISION,
FLORIDA DEPARTMENT OF TRANSPORTATION,
SECRETARY STEPHANIE C. KOPELOUSOS,

                                                      Defendants - Appellees.

Appeal from the United States District Court
for the Southern District of Florida

(February 6, 2012)

Before WILSON and COX, Circuit Judges, and RESTANI,[*] Judge.

WILSON, Circuit Judge:

This appeal concerns the actions and decisions of the Federal Highway Administration ("FHWA") and the Secretary of the Florida Department of Transportation ("FDOT") during the planning and development of the Indian Street Bridge Project in Martin County, Florida. Appellants Odias Smith, Katie Smith, and Citizens for Smart Growth (collectively, "Citizens") brought suit under the Administrative Procedure Act, 5 U.S.C. §§ 701–706, alleging that FHWA and FDOT violated both the National Environmental Protection Act of 1969 ("NEPA"), 42 U.S.C. §§ 4321–4347, and Section 4(f) of the Department of Transportation Act ("Section 4(f)"), 49 U.S.C. § 303, during development of the project. Citizens also requested an injunction to stop construction of the bridge. The district court granted summary judgment in favor of FHWA and FDOT and

_____

[*] Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by designation.

2

denied the injunction. After review of the extensive 10,000-page administrative record in this case, we affirm the district court.

## I. Background

In 1998, FDOT began the planning and decision process that led up to the construction of the Indian Street Bridge in Martin County. Responding to Martin County's desire for an additional crossing of the St. Lucie River for traffic relief and evacuation purposes, FDOT began investigating possible improvements to the State Road 714 corridor. FDOT presented the findings of this investigation in the Feasibility Study Report ("Feasibility Study") of 1998. The Feasibility Study considered one corridor—the existing four-lane Palm City Bridge on State Road 714—and evaluated three alternatives within this corridor: a No-Build Alternative, a Six-Lane Alternative, and an Eight-Lane Alternative. The study concluded that widening the bridge would require taking Section 4(f) properties, possibly exceed noise maximums, potentially negatively impact the environment, and possibly affect Superfund sites along the corridor. Additionally, only the Eight-Lane option provided the level of service required in design year 2026, but this option was barred by FDOT policy regarding lane maximums on state highways. The Feasibility Study concluded that the No-Build Alternative was the "best"

3

alternative of those examined but recommended that other alternatives (including an additional bridge crossing) be considered to address the traffic concerns.

FDOT then prepared the New Bridge Crossing Alternative Corridor Report ("Corridor Report"), released in March 2001. The Corridor Report examined seven potential corridors for a river crossing and one tunnel alternative and evaluated each option on the basis of cost, traffic service levels, engineering factors, environmental impacts (noise, air quality, wetlands impact, endangered species impact, and potential contamination), and socio-economic factors (public opinion, Section 4(f) impacts, future development, sustainability, and community cohesion). As part of this analysis, the Corridor Report also took into account that the Martin County Metropolitan Planning Organization had unanimously endorsed the Indian Street Corridor and voted to prohibit widening State Road 714. The Corridor Report concluded that Corridor Three, the Indian Street Crossing, was the best alternative because it had scored highest on the evaluation matrix.

Following the completion of the Corridor Report, the FHWA prepared a Draft Environmental Impact Statement ("EIS") as required by NEPA; distributed it to federal, state, and local agencies for notice and comment; and published it in the Federal Register. Citizens submitted an alternative ("Citizens's Alternative") during this comment period, proposing a combination of traffic management

4

mechanisms and road improvements rather than construction of a new bridge. Appellees analyzed Citizens's Alternative, but they ultimately rejected it because it did not provide another corridor across the river—desirable for emergencies and evacuations—or reduce traffic to the extent desired. On July 6, 2006, FHWA issued the Final EIS ("FEIS"), which incorporated by reference the findings of the Feasibility Study and the Corridor Report. On October 19, 2006, FHWA signed a Record of Decision ("ROD"), responding to the comments to the FEIS and approving the project. The Feasibility Study, Corridor Report, FEIS, and ROD were made available to the public.

Citizens filed suit on April 20, 2007, alleging that Appellees violated NEPA and Section 4(f) in their development of the Indian Street Bridge Project. On October 1, 2009, Citizens's motion for a preliminary injunction was denied. Both parties moved for summary judgment, and on April 30, 2010, the district court granted summary judgment in favor of FHWA and FDOT and denied the motion for an injunction. All other pending motions were dismissed. The project received funding from the American Reinvestment and Recovery Act on February 9, 2010, and construction of the bridge is now underway.

## II. Jurisdiction

This suit was brought under the Administrative Procedure Act ("APA"), which provides for judicial review of federal agency actions and allows federal courts to enjoin authorities of the United States government. *See* 5 U.S.C. §§ 701, 702. Citizens seeks only injunctive relief against the Secretary of FDOT. The Secretary argues that this court lacks jurisdiction to enjoin a state official in an action based on the APA because FDOT is not a federal agency.

Our jurisdiction over a state official in an action like this one is a complex legal question and presents an issue of first impression in this circuit. Other circuits that have addressed this question have focused on whether a highway project constitutes a major federal action or whether the state and federal projects are sufficiently interrelated. *Sw. Williamson Cnty. Cmty. Ass'n, Inc. v. Slater*, 243 F.3d 270, 277 (6th Cir. 2001) ("If we conclude that the highway corridor constitutes a 'major federal action,' then we have the authority to instruct the district court to enjoin the state from further construction on the highway."); *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1397 (9th Cir. 1992) ("Nonfederal defendants may be enjoined if federal and state projects are sufficiently interrelated to constitute a single federal action for NEPA purposes." (quotation marks omitted)).

While we agree with the Secretary of FDOT that the APA does not apply to state agencies, we decide that jurisdiction over the Secretary may be exercised in the circumstances of this case. The Secretary admits that "FDOT's substantial role is well documented in the Administrative Record." And, the Secretary calls FDOT a "party working in tandem with federal agencies." Given these circumstances, and the fact that the plaintiffs have only sought injunctive relief against the Secretary, we find the district court properly exercised its jurisdiction over the Secretary in this case.[1]

## III. Standard of Review

We review a grant of summary judgment *de novo* and apply the same legal standards as the district court. *See Wilderness Watch & Pub. Emps. for Envtl. Responsibility v. Mainella*, 375 F.3d 1085, 1087–88 (11th Cir. 2004). When confronted with claims brought under the APA, we may only set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This standard is "exceedingly deferential." *Sierra Club v. Van Antwerp*, 526 F.3d 1353, 1360 (11th Cir. 2008).

---

[1] We question whether it would even be necessary for the Secretary to be a party to this case in order for an injunction to bind the Secretary. *See* Fed. R. Civ. P. 65(d)(2)(A), (C) (stating that an order granting an injunction binds the parties and "other persons who are in active concert or participation" with the parties provided they have actual notice).

> To determine whether an agency decision was arbitrary and capricious, the reviewing court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. This inquiry must be searching and careful, but the ultimate standard of review is a narrow one. Along the standard of review continuum, the arbitrary and capricious standard gives an appellate court the *least* latitude in finding grounds for reversal; administrative decisions should be set aside in this context only for substantial procedural or substantive reasons as mandated by statute, not simply because the court is unhappy with the result reached.

*Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 541–42 (11th Cir. 1996) (quotation marks and ellipses omitted).

## IV. NEPA

The National Environmental Protection Act sets forth review procedures that federal agencies must engage in before taking any "major" actions. 42 U.S.C. § 4332. Section 102(2)(C) of NEPA requires that to evaluate the proposed action an agency must prepare an EIS that includes "a detailed statement of (i) the environmental impact of the proposed action, (ii) any adverse environmental effects which cannot be avoided should the proposal be implemented, (iii) alternatives to the proposed action, (iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and (v) any irreversible and irretrievable commitments of resources

which would be involved in the proposed action should it be implemented."
*Druid Hills Civic Ass'n, Inc. v. Fed. Highway Admin.*, 772 F.2d 700, 708 (11th Cir. 1985) (citing 42 U.S.C. § 4332(2)(C)).  The requirements of NEPA are purely procedural and do not mandate any specific outcome; agencies may make a decision that preferences other factors over environmental concerns as long as they have first adequately identified and analyzed the environmental impacts.  *Van Antwerp*, 526 F.3d at 1361.  A court reviewing NEPA compliance may only ask whether the agency took a "hard look" at environmental consequences.  *Druid Hills*, 772 F.2d at 709.  A challenging party has the burden of showing by a preponderance of the evidence that the agency did not comply with NEPA's procedures.  *Sierra Club v. Callaway*, 499 F.2d 982, 992 (5th Cir. 1974).

*A. Incorporation of Local Planning Documents*

Citizens argues that it was improper of FHWA to rely upon FDOT's Feasibility Study and Corridor Report when preparing the FEIS.  However, circuit precedent holds that incorporation of local planning documents is permissible and that references to such documents can satisfy the requirements of NEPA.  *See Piedmont Heights Civic Club, Inc. v. Moreland*, 637 F.2d 430, 438 (5th Cir. Unit B Feb. 1981) ("The reference to the [regional planning document] contained in the . . . EISs was sufficient to satisfy the procedural and substantive requirements of

9

NEPA.").[2]  Furthermore, the Council on Environmental Quality Guidelines instruct that "[a]gencies *shall* incorporate material into an environmental impact statement by reference," 40 C.F.R. § 1502.21 (emphasis added), and encourage joint federal and local action, *see* 40 C.F.R. § 1502.5(b).

Citizens also contends that use of the local planning documents was impermissible because FHWA failed to participate in the preparation of the documents.  In support of its position, Citizens points to 23 C.F.R. § 771.109(c)(5), which states that a local agency "may prepare the EIS and other environmental review documents with the Administration furnishing guidance, participating in the preparation, and independently evaluating the document." However, the Feasibility Study and the Corridor Report are not NEPA environmental review documents; they are support documents that were referenced in an environmental review document: the FEIS.  *See* 23 C.F.R. § 771.111(a)(2).  "Publicly available documents . . . produced by, or in support of, the transportation planning process . . . may be incorporated directly or by reference into subsequent NEPA documents" and require review by the FHWA

---

[2] In *Piedmont Heights*, the court explained that because the regional planning documents "were readily available to the public," the agency was "not required to reiterate facts and figures" already made public.  637 F.2d at 438.  Following this reasoning, because Appellees made the Feasibility Study and Corridor Report available to the public, they were able to satisfy their NEPA obligations by incorporating those documents by reference rather than republishing the already-public information.

only "as appropriate." 23 § C.F.R. 450.212(b). We find no error in FHWA's incorporation of the local planning documents in the FEIS.

*B. Purpose and Need Statement*

Citizens contends that FHWA adopted an impermissibly narrow Purpose and Need Statement that foreclosed consideration of a sufficiently wide array of alternatives. NEPA's only requirement regarding the Purpose and Need Statement is that it "briefly specify the underlying purpose and need to which the agency is responding in proposing the alternatives including the proposed action." 40 C.F.R. § 1502.13. "[A]gencies must look hard at the factors relevant to the definition of purpose" and "should take into account the needs and goals of the parties involved in the application." *Citizens Against Burlington, Inc. v. Busey*, 938 F.2d 190, 196 (D.C. Cir. 1991). "[A]n agency may not define the objectives of its action in terms so unreasonably narrow that only one alternative from among the environmentally benign ones in the agency's power would accomplish the goals of the agency's action, and the EIS would become a foreordained formality." *Id.* "Nor may an agency frame its goals in terms so unreasonably broad that an infinite number of alternatives would accomplish those goals and the project would collapse under the weight of the possibilities." *Id.*

The FEIS stated that the purpose of the study was "to evaluate and comprehensively examine various alternatives for an additional crossing of the South Fork of the [St. Lucie] River in Martin County, Florida." It also explained that an additional crossing was desired to accommodate infrastructure needs, satisfy transportation demands, and facilitate emergency response and evacuation. Although Citizens objects to FHWA's limitation of the scope of the statement to cover only a Southern crossing of the river, we find FHWA's rationale—that an existing bridge across the river serves mainly the central and northern parts of the county—to be reasonable. In sum, we find FHWA's consideration of the relevant factors to be sufficient and the Purpose and Need Statement to be not unduly narrow.

*C. Review of Environmental Impacts*

Citizens alleges the following deficiencies in the FEIS: inadequate review of alternatives, failure to take a "hard look" at direct effects, and insufficient consideration of cumulative and indirect impacts.

First, Citizens asserts that Appellees failed to complete a detailed analysis of all alternatives because it relied upon conclusions of local planning documents to reject some alternatives prior to the preparation of the FEIS. As explained above, the reliance on local planning documents was appropriate. Regarding

12

Citizens's contention that too few alternatives were considered in the FEIS, NEPA's requirement that alternatives be considered is "bounded by some notion of feasibility." *Druid Hills*, 772 F.2d at 713 (citation and quotation marks omitted). Agencies only have to consider "reasonable alternatives," and we evaluate their choices against a "rule of reason." *Id.* NEPA does not impose any minimum number of alternatives that must be evaluated. *See N. Buckhead Civic Ass'n v. Skinner*, 903 F.2d 1533, 1541–43 (11th Cir. 1990) (finding that an EIS with only two alternatives studied in detail was sufficient); *Tongass Conservation Soc'y v. Cheney*, 924 F.2d 1137, 1140–42 (D.C. Cir. 1991) (finding that agency complied with NEPA when thirteen of fourteen alternatives were eliminated as unreasonable and only one alternative was discussed in detail in the EIS). Here, Appellees considered three alternatives in the FEIS—the Indian Street Bridge Alternative, the No-Build Alternative, and the Traffic System Management Alternative—and also analyzed Citizens's Alternative in depth. Reviewing Appellees' choice and analysis of alternatives presented in the EIS under a rule of reason, we find Appellees' consideration of alternatives to be "sufficient to permit a reasoned choice." *N. Buckhead Civic Ass'n*, 903 F.2d at 1541.

When alternatives are rejected from consideration in an EIS, there is no duty to perform in-depth analyses of these alternatives. 40 C.F.R. § 1502.14(a) (stating

that agencies shall "[r]igorously explore and objectively evaluate all reasonable alternatives," but when alternatives have been rejected from consideration, agencies need only "*briefly* discuss the reasons for their having been eliminated" (emphasis added)). Because Appellees' choice to exclude the alternatives that it did was appropriate, Appellees had no duty to conduct an in-depth analysis of those rejected alternatives in the FEIS. Appellees, by discussing in the FEIS their analysis of the expected environmental effects of the corridors and the relative impact of the various alternatives on cost, traffic service, engineering, environmental, and socio-economic factors, more than fulfilled NEPA's requirement to "briefly discuss" the rejected alternatives.

Second, Citizens alleges that Appellees failed to take a "hard look" at the direct environmental effects of the proposed action, as required by 40 C.F.R. § 1502.16(a). Citizens argues that one arbitrary and capricious act of Appellees regarding their study of direct impacts was the choice to continue with environmental studies after the EIS was completed. In making this argument, Citizens urges us to conclude from the fact that studies are ongoing that they could not have been developed to an appropriate extent when the EIS was created.[3]

---

[3] Citizens also argues that Appellees violated the requirement that the "draft EIS shall also summarize the studies, reviews, consultations, and coordination required by environmental laws or Executive Orders to the extent appropriate at this stage in the environmental process." 23

However, a commitment to ongoing studies alone is not necessarily indicative of an insufficient EIS. *See City of Carmel-by-the-Sea v. U.S. Dep't of Transp.*, 123 F.3d 1142, 1167 (9th Cir. 1997) (finding that an agency with only a "conceptual" mitigation plan that intended to continue compliance efforts had satisfied Executive Order 11990 because it had complied "to date"). Because we do not find the scheduling choice alone to be arbitrary or capricious, we turn to examine the alleged substantive deficiencies of the EIS.

Citizens points to specific studies to illustrate its claim that Appellees failed to adequately evaluate direct environmental impacts of the proposed action. Under the Magnuson-Stevens Fishery Conservation and Management Act of 1996 ("MSFCMA"), 16 U.S.C. §§ 1801–1883, federal agencies are required to prepare an Essential Fish Habitat Assessment and consult with the National Marine Fisheries Service prior to taking an action that would adversely impact an essential fish habitat, 50 C.F.R. § 600.920. Appellees did so, but Citizens alleges that the study area selected to review cumulative effects—the drainage basin of the South Fork of the St. Lucie River—was too narrow, and thus the assessment was

C.F.R. § 771.123(c). Citizens's argument glosses over the "to the extent appropriate" caveat of that regulation and fails to acknowledge the instructions of 23 C.F.R. § 771.133: "If full compliance [with other environmental regulations] is not possible by the time the final EIS . . . is prepared, the final EIS . . . should reflect consultation with the appropriate agencies and provide reasonable assurance that the requirements will be met." A commitment to continue with ongoing environmental reviews would embody exactly this kind of assurance.

15

insufficient.  Appellees respond that the basin area selected for review of cumulative impacts was the only basin into which another bridge also drained, and thus the only area where cumulative impacts could potentially occur.  This rationale is hardly indicative of arbitrary and capricious decision making.[4]

Citizens also asserts that Appellees did not comply with Executive Orders 11988 and 11990 because Appellees' analyses lacked detail and were overly conclusory.

> Executive Order 11988, entitled "Floodplain Management," requires federal agencies taking action in or affecting a floodplain to think twice. The agency must consider the project's effects on the floodplains and possible alternatives, and may proceed only if it finds that the only practicable alternative requires sitting in the floodplain. In designing its plan the agency must take steps to minimize potential damage to the floodplain.

*City of Carmel-by-the-Sea*, 123 F.3d at 1166 (quotation marks and footnote omitted).  Executive Order 11990, entitled "Protection of Wetlands," provides "similar protection" regarding wetlands.  *Sierra Club v. Hassell*, 636 F.2d 1095, 1100 (5th Cir. Unit B Feb. 1981).  Section Four of the FEIS contains a detailed discussion of floodplains and wetlands.  Both the floodplains and wetlands

---

[4] Citizens also contends that Appellees acted in error by failing to consider alternatives to the action, but an analysis of alternatives is not mandatory under the Act.  *See* 50 C.F.R. § 600.920(e)(3) (listing mandatory contents of assessment); 50 C.F.R. § 600.920(e)(4) (listing additional information—including an analysis of alternatives—to be included "[i]f appropriate").

16

subparts of Section Four discuss harm-minimization plans. The floodplains subpart concludes that because the area along the river is prone to flooding, there is no practicable alternative to locating the bridge in a floodplain. The wetlands subsection explains that due to the nature of bridge construction and the terrain around the St. Lucie River, there are no practicable alternatives to impacting wetlands. Overall, we find this analysis, as well as the discussions of other direct impacts, satisfactorily thorough and neither arbitrary nor capricious.

Third, Citizens contends that Appellees' review of cumulative and indirect impacts was insufficient. Indirect impacts are reasonably foreseeable long-term effects of the proposed action. 40 C.F.R. § 1508.8(b). "Cumulative impact is the impact on the environment which results from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions regardless of what agency (Federal or non-Federal) or person undertakes such other actions." *Id.* § 1508.7 (quotation marks omitted). Appellees discuss both types of impacts in the subsection of the FEIS entitled "Indirect and Cumulative Impacts." That subsection discusses the cumulative impacts on current and existing growth, emergency response and evacuation, wildlife, essential fish habitats, and water quality, as well as proposed transportation projects. The FEIS also noted that no other major construction projects pending in the area had

17

obtained permit applications. The FEIS discussion of these matters, therefore, was sufficient.

Citizens alleges that Appellees' indirect impacts assessment is faulty because it fails to consider the change that would result from the project's stimulation of commercial interests in a previously residential area. However, in their review of indirect impacts of the project, Appellees found that other commercial uses in the study area were already being planned or developed. Therefore, Appellees concluded that any induced commercial growth would not constitute a change to the area. Citizens also objects to the area selected for the study of induced growth but fails to explain why Appellees' choice was erroneous. Determining the geographic extent of an analysis area is the kind of task "assigned to the special competency of the appropriate agencies," and such a determination can only be overturned by a showing of arbitrariness or capriciousness in the decision making. *See Kleppe v. Sierra Club*, 427 U.S. 390, 414, 96 S. Ct. 2718, 2732 (1976). Furthermore, the FEIS recognized that commercial uses were in development or in the planning stages for development along the project's corridor. Appellants cannot demand a more detailed response to their challenge without identifying precise geographic areas or instances of induced growth,

considering that the project is already underway. Here, the FEIS's finding that no land use change is expected to occur adequately addresses Appellants' concerns.

In their study of cumulative effects, Appellees found that because no other construction projects were listed on the Martin County Five-Year Capital Improvements Plan as pending in the project area, no cumulative impacts could be expected. Citizens argues that referencing to the Five-Year Plan was an error and that Appellees should have consulted the Martin County Long-Range Plan instead. However, Appellees determined that because the projects on the Long-Range Plan were listed far before their actual development, any analysis of the cumulative impacts of the Long-Range Plan projects would be mostly speculative.[5] We have held that agencies cannot be "forced to analyze the environmental impact of a project, the parameters and specifics of which would be a mere guess." *City of Oxford v. FAA*, 428 F.3d 1346, 1356 (11th Cir. 2005).

Ultimately, Citizens argues that Appellees should have used different and better methodologies for reviewing environmental impacts of the project. However, we do not review an agency's compliance with NEPA by asking whether it made the optimal choices; NEPA does not require perfection. *See*

---

[5] *See* 23 U.S.C. § 135(f) ("Each State shall develop a long-range statewide transportation plan, with a *minimum 20-year forecast period . . . .*") (emphasis added).

19

*Druid Hills*, 772 F.2d at 708–09. Appellees' compliance with NEPA may not have been perfect, but it was sufficient.

### D. Need for a Supplemental Environmental Impact Statement

The Indian Street Bridge has four phases that were originally planned to be completed contemporaneously, but FDOT announced on May 1, 2009 that one phase will commence prior to the others. Citizens now attempts to argue that Appellees erred by not completing a Supplemental Environmental Impact Statement ("SEIS") investigating the impacts of phasing.[6] However, Citizens did not raise this issue in its Amended Complaint.[7] Instead, Citizens alleged in its Amended Complaint that an SEIS was necessary because Citizens had submitted its Alternative, which included information and proposals about traffic modeling systems. Citizens's argument on appeal—that the decision to utilize phasing must be examined further in an SEIS—is substantially different than that alleged in its Complaint, and we will not consider a claim not detailed in the plaintiff's pleadings. *See Maniccia v. Brown*, 171 F.3d 1364, 1367 n.1 (11th Cir. 1999).

---

[6] A SEIS is required when the agency "makes substantial changes in the proposed action that are relevant to environmental concerns; or [t]here are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." 40 C.F.R. § 1502.9(c)(1).

[7] Citizens filed a motion to amend its Complaint to include the argument it now raises; Appellees opposed the motion as untimely. The district court denied the motion as moot when it entered its May 3, 2010 summary judgment order.

## V. Section 4(f)

Section 4(f) of the Transportation Act allows the Secretary of Transportation to approve a federal highway project using the land of a public park, recreation area, wildlife refuge, or historic site only if "(1) there is no prudent and feasible alternative to using that land; and (2) the program or project includes all possible planning to minimize harm to the park, recreation area, wildlife and waterfowl refuge, or historic site resulting from the use." 49 U.S.C. § 303(c).

Section 4(f)(1) requires that the Secretary must make a finding that no feasible or prudent alternatives to the use of Section 4(f) lands exist. "An alternative is feasible if it can be built as a matter of sound engineering." *Druid Hills*, 772 F.2d at 715. An alternative is prudent unless there are "truly unusual factors present in a particular case or the cost or community disruption resulting from alternative routes reached extraordinary magnitudes" or the alternative routes present "unique problems." *Id.* (alteration omitted). When evaluating alternatives during a Section 4(f)(1) review, the Secretary need not consider options that impact Section 4(f) lands because "[a]n alternate route that also impacts upon parks and historic sites is not an alternative to the use of such property." *Id.* (quotation marks omitted).

If the Secretary determines that there are no feasible or prudent alternatives to using Section 4(f) property for the project, the Secretary must then comply with the mandate of Section 4(f)(2) to minimize harm to parks and historic sites. This requires "a simple balancing process which totals the harm caused by each alternate route to section 4(f) areas and selects the option which does the least harm." *Id.* at 716. Unlike 4(f)(1), the 4(f)(2) analysis requires the Secretary to consider alternatives that would use 4(f) lands. *See id.*

We use a three-part test to review the Secretary's compliance with Section 4(f). First, we ask whether the Secretary acted within the scope of his authority: did he construe his authority to approve projects to be limited to situations where no feasible and prudent alternatives to the use of 4(f) property existed, and could he have reasonably believed that no such alternatives existed? *Druid Hills,* 772 F.2d at 714. Second, we inquire whether the Secretary's ultimate decision was arbitrary, capricious, or an abuse of discretion. *Id.* Third, we ask if the Secretary followed the necessary procedural requirements. *Id.* "[T]he Secretary's decision is entitled to a presumption of regularity," but "that presumption does not shield his action from a thorough, probing, in-depth review." *Id.* (quotation marks and

22

citation omitted).  Our review of the Secretary's actions focuses on the administrative record, not the district court's opinion.[8]  *Id.*

Citizens argues that the brevity of the statements in the FEIS regarding Section 4(f) compliance reveals that the Secretary had no reasonable basis to believe that no prudent alternatives to the project exist.  Citizens cites to *Stop H-3 Ass'n v. Coleman*, 533 F.2d 434, 445 (9th Cir. 1976), for the proposition that conclusory or unsupported statements do not satisfy the Secretary's 4(f) burden.  However, in *Stop H-3*, the Secretary's position was that Section 4(f) "was altogether inapplicable," and the court found that "[i]n the light of that consistently recorded position, it is not possible, with factual accuracy, to conclude that the Secretary evaluated [the proposed highway] with the explicit directives of 4(f) firmly in mind."  533 F.2d at 445.  The factual situation here is radically different: the FEIS itself contains a lengthy discussion of 4(f) impacts and also references the Corridor Report, which provides even more analysis of the alternatives' effects on 4(f) lands.  Unlike in *Stop H-3* where the court found that the Secretary could not have evaluated the project with the directives of Section

---

[8] Citizens challenges the sufficiency of Appellees' Section 4(f) analyses (in the administrative record), upon which the Secretary based his Section 4(f) determinations.  Therefore, our discussion of Section 4(f) compliance in this case centers on whether Appellees' Section 4(f) analyses and determinations were adequate.

4(f) in mind, the thorough discussion of Section 4(f) impacts indicates a mindfulness of Section 4(f) not present in *Stop H-3*. Because the analysis in the instant case does in fact demonstrate consideration that each of the alternatives was not feasible and prudent within the context of Section 4(f), the facts do not support Citizens's arguments that the Secretary's review was cursory.

Citizens also contends that the reasons for rejecting alternatives as imprudent were insufficient because the Secretary failed to point to extraordinary or unique circumstances, as mandated by *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 413, 91 S. Ct. 814, 822 (1971). We disagree. Some of the corridor alternatives did not avoid the use of 4(f) lands, so they did not need to be considered during the Section 4(f)(1) inquiry. *See Druid Hills*, 772 F.2d at 715. Some of the alternatives were rejected because they did not fulfill the purpose and need of the project. This circuit has long maintained that failure to meet a project's purpose can render an alternative imprudent. *See Druid Hills*, 772 F.2d at 715–16. The remainder of the alternatives were rejected due to extraordinarily high costs, unacceptable or severe environmental impacts, or both, which are sufficient foundations for finding that the alternatives were imprudent. *See* 23 C.F.R. § 774.17 (stating that an alternative is not prudent if: it "compromises the project to a degree that it is unreasonable to proceed with the project in light of its

24

stated purpose and need"; causes severe "social, economic, or environmental impacts," "disruption to established communities," or "impacts to environmental resources protected under other Federal statutes"; "results in additional construction, maintenance, or operational costs of an extraordinary magnitude"; or "involves multiple factors in . . . this definition, that while individually minor, cumulatively cause unique problems or impacts of extraordinary magnitude").[9] FHWA's explanations are sufficient and will not be found lacking simply because they did not include the terms "extraordinary" or "unique." *See Comm. to Pres. Boomer Lake Park v. Dep't of Transp.*, 4 F.3d 1543, 1550–51 (10th Cir. 1993) (explaining that the "mechanical use" of magic words "is unrelated to the [4(f)] documents' substantive merit"); *Hickory Neighborhood Def. League v. Skinner*, 910 F.2d 159, 162–63 (4th Cir. 1990) (holding that it was unnecessary for the Secretary to use the terms "unique" and "extraordinary" in the § 4(f) analysis). Furthermore, "an administrative decision 'of less than ideal clarity' will be upheld 'if the agency's path may reasonably be discerned.'" *La. Envtl. Soc., Inc. v. Dole*, 707 F.2d 116, 123 (5th Cir. 1983) (citing *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285–86, 95 S. Ct. 438, 442 (1974)). Based on the

---

[9] FHWA's March 2005 Section 4(f) Policy Paper, in effect at the time the Indian Street Bridge Project was approved, was codified in substantially similar form at 23 C.F.R. § 774.17.

record, we do not find that the Secretary acted arbitrarily or capriciously in making his determination that the alternatives rejected were imprudent, and we find sufficient evidence that the Secretary could have reasonably believed that there were no feasible or prudent alternatives.[10]

Finally, Citizens argues that FHWA failed to comply with the procedural requirements of Section 4(f). Because Citizens did not raise this issue below, we cannot consider it now. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("This Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." (citations omitted)).

The district court's denial of injunctive relief and grant of summary judgment in favor of FHWA and FDOT is

**AFFIRMED.**

---

[10] Citizens additionally asserts that the Secretary should have considered a broader range of environmental factors and completed more detailed studies when making his prudence determinations. We find the large number of factors considered to be sufficient to make a reasoned decision. Although it may be true that a wider review would be optimal, this does not amount to a reason to overturn a satisfactory 4(f) determination.